**Homer Aki MATHIS,
Petitioner–Appellee,**

v.

**David HOOD, Superintendent, Otisville
Correctional Facility,
Respondent–Appellant.**

**No. 745, Docket 90–2360.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 18, 1990.

Decided June 28, 1991.

Charles E.F. Millard, Jr., New York City
(Davis Polk & Wardwell, Steven J. Pappas,
Frederick R. Kessler, Ogden N. Lewis, of
counsel), for petitioner-appellee.

Vida M. Alvy, New York City, Asst. Atty. Gen. (Robert Abrams, Atty. Gen. of the State of New York, Harvey Golubock, Deputy First Asst. Atty. Gen. (of counsel), Peter H. Kaminer, Thomas F. Clauss, Jr., Winthrop, Stimson, Putnam & Roberts, Sp. Counsel), for respondent-appellant.

Before MESKILL, PRATT and WALKER, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Respondent-appellant David Hood appeals from a judgment entered in the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., *Judge*, granting in part petitioner-appellee Homer Mathis's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The district court found that Mathis's due process rights had been violated by a six-year delay in the hearing of his appeal from a criminal conviction. It also found that Mathis's appellate counsel in the state court had a conflict of interest sufficient to undermine confidence in the outcome of the appeal. As a result, the court set aside the affirmance of Mathis's conviction by the New York Supreme Court, Appellate Division, First Department, ordered a new appeal, and ordered Mathis's immediate release pending the new appeal. We affirm the judgment of the district court only because we find no error in the district court's finding of a per se sixth amendment violation arising from the appellate attorney's conflict of interest.

## BACKGROUND

On the night of July 18, 1980, Mathis and a co-defendant entered the home of Shirley Usher, and while wielding a gun and a hatchet, bound and gagged Usher and her son, Michael Savery, ransacked her home, and stole her belongings. Both defendants were subsequently apprehended, and on May 28, 1981, Mathis was found guilty by a jury of four counts of robbery in the first degree. He was sentenced as a second felony offender to four concurrent indeterminate prison terms of ten to twenty years.

Mathis filed a notice of appeal almost immediately after he was sentenced. A statement of the events that occurred subsequent to the filing of the notice appear in a prior decision of this court, the relevant portion of which is quoted below:

Mathis filed a notice of appeal on October 13, 1981. On November 17, the Appellate Division granted his request to prosecute his appeal as an impoverished individual, directed the trial court stenographers to produce two copies of the trial transcript within 20 days, appointed the Legal Aid Society to act as appellate counsel, and extended the time to perfect the appeal until 120 days from the filing of the record.

The trial minutes were not filed for over 15 months. During this period Mathis wrote a number of letters to Legal Aid inquiring about the status of the case and asking why no attorney had been assigned to it. Legal Aid responded only that it had not yet received the minutes. About one month after the complete minutes were filed on March 2, 1983, Legal Aid received a copy.

Legal Aid had represented Mathis's co-defendant at trial. Consequently, on April 7, 1983, Legal Aid notified Mathis that it had "recently discovered" a conflict of interest and that it would ask the Appellate Division to be relieved as assigned counsel from the case.

On May 17, 1983, the Appellate Division granted Legal Aid's request and selected Peter F. Anderson from the 18–B panel, a list of lawyers who handle appeals for a fee, to represent Mathis. The trial minutes were forwarded to Anderson later that month. Five months later, on October 14, 1983, Anderson sent Mathis a brief letter promising to file the appeal within the next three months.

On October 31, 1983, the Deputy Clerk of the Appellate Division informed Mathis that his appeal was to be placed on the dismissal calendar. By letter dated November 1, 1983, Mathis requested "an enlargement of time" to file the brief and asked the court to "get in touch with [his] councel [sic] and inform him of this particular situation...."

After writing several unanswered letters to Anderson about the appeal and enlisting the aid of the inmate legal service, Mathis contacted the Appellate Division and asked the Clerk to look into the delay. The Clerk responded only that his letters were being forwarded to Anderson.

Since no brief had been filed by Anderson, the Deputy Clerk informed Mathis that his appeal was again to be placed on the dismissal calendar as of June 7, 1984. Mathis wrote a letter to the court, dated May 25, 1984, explaining that the delay was due to Anderson's inaction and asking that Anderson be replaced. Six weeks later, upon the court's own motion, Anderson was replaced with another attorney, Ruben S. Schofield, who was directed to perfect the appeal within 120 days of receipt of the record.

Schofield proved to be equally dilatory. During the period of his appointment, Mathis wrote to him many times. Finally, on June 10, 1985, eleven months after Schofield was appointed, Mathis filed a *pro se* civil rights action under 42 U.S.C. § 1983 in the Southern District seeking damages against the Clerk of the Appellate Division and individual stenographers. * * *

Schofield finally filed a brief in November, 1986, after Mathis filed a grievance with the Disciplinary Committee of the First Department. The state did not file opposing papers until August 20, 1987. Mathis then filed this habeas corpus petition on August 27, 1987, contending that the delay in the briefing, hearing and deciding of the appeal violated his rights under the federal Due Process Clause. In a Memorandum Order dated September 16, Judge Daronco dismissed the petition for failure to exhaust state remedies. According to the district court, Mathis must first have pursued a writ of error *coram nobis* in the state court before a federal court may entertain the claim.

On October 20, 1987, over six years after his appeal was filed, the Appellate Division affirmed Mathis's conviction without opinion.

*Mathis v. Hood*, 851 F.2d 612, 613–14 (2d Cir.1988) (*"Mathis I"*). In *Mathis I*, the state argued that because the appellate division had affirmed the conviction, the habeas corpus action had become moot. We disagreed. We also rejected the district court's conclusion that Mathis had failed to exhaust his state remedies, so we remanded the case to the district court "to address the merits of petitioner's due process claim and determine what relief, if any, may be available." 851 F.2d at 615.

On remand, Judge Patterson held that the appellate delay had violated Mathis's right to due process. He also found that Mathis's appellate counsel had a conflict of interest which undermined confidence in the outcome of the appeal and rose to the level of a per se sixth amendment violation, thus warranting issuance of a writ of habeas corpus. At the time, Mathis had served nearly the minimum time required by his state sentence, and he would be eligible for parole in about one month. For relief, Judge Patterson did not vacate the conviction and dismiss the indictment, as requested by Mathis. Instead, he granted the limited relief of vacating the affirmance in the state appellate court, ordering a new appeal, and apparently in view of the imminence of Mathis's release on parole, ordering his immediate release pending the outcome of the appeal.

## DISCUSSION

The constitution does not explicitly provide for a right to an appeal. However, the Supreme Court has held that if the state has created an entitlement to an appeal, the constitution does require due process of law, including the right to effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 393–94, 105 S.Ct. 830, 834–35, 83 L.Ed.2d 821 (1985). At first blush, this appeal seems to raise once again the question of whether habeas relief can be granted because of an unreasonable delay in the hearing of a criminal appeal by the state court. On closer examination, however, the appeal presents not a problem of the

due process implications of appellate delay, but an issue of conflict of interest between appellate counsel and the defendant.

■ We have previously held that due process requires that an appeal be heard promptly. *See Diaz v. Henderson*, 905 F.2d 652, 653 (2d Cir.1990); *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir.1990); *Jenkins v. Coombe*, 821 F.2d 158 (2d Cir. 1987). Nevertheless, we have yet to hold that appellate delay by itself constitutes grounds for habeas relief, and we decline to do so today. Insofar as Mathis's position might be interpreted to mean that the mere lapse of time is a sufficient basis for release, we reject it based on our previous decisions in *Simmons* and *Diaz*. Thus far, we have held that a remedy, perhaps the only remedy for a convicted defendant awaiting his state appeal is to move quickly to obtain a conditional writ. *See Diaz*, 905 F.2d at 652; *Simmons*, 898 F.2d at 870. If the defendant does not act quickly to require that his appeal be heard, he cannot later argue that he is entitled to release because the state court took too long to hear his appeal.

■ Because the state court has already affirmed Mathis's appeal, the remedy of an alternative writ is not available to him. We do recognize, however, that the six-year delay constituted a violation of Mathis's due process rights. Unfortunately for Mathis, we do not consider this delay, without more, to be a sufficient basis for release from custody.

Mathis argues that the analysis in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–94, 33 L.Ed.2d 101 (1972), is the relevant test to determine both whether a due process violation occurred *and* whether a habeas petitioner is entitled to relief. We disagree. The *Barker* analysis goes only to the question of whether a due process violation has occurred, and we find no error with the district court's application of the *Barker* factors and its holding that Mathis did suffer such a violation. A separate and distinct inquiry, however, is required to determine the appropriate remedy for the violation; some showing of prejudice to the appeal is necessary for habeas relief. *See*

*Simmons*, 898 F.2d at 869; *Diaz*, 905 F.2d at 653.

■ In this case, the district court believed that although we have required a showing of prejudice, we have yet to define the exact test for the degree of prejudice necessary to grant relief. It then determined that the appropriate test for prejudice was one "akin to the second prong of *Strickland*: appellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the standard for prejudice was unclear from our previous cases, we now clarify the standard and approve the district court's adoption of the second prong of the *Strickland* test for use in determining whether habeas relief is justified. Because we cannot discern from the record any indication that the delay itself caused prejudice to Mathis's appeal, the *Strickland* test for overturning a conviction on the basis of ineffective assistance of counsel cannot be met in this case. Thus, Mathis is not entitled to habeas relief on the basis of his appellate delay claim.

We must go further with this case, however, because the district court concluded that habeas relief was appropriate, not because of the delay alone, but because it found that Mathis's appellate counsel had a conflict of interest, generated by the delay, which undermined confidence in the outcome of his state appeal. The court therefore set aside the affirmance of the state conviction and ordered a new appeal. In effect, the case raises the issue of whether there was a sufficient conflict of interest between the attorney and his client to find that there was a per se violation of the sixth amendment right to counsel, thereby making unnecessary any examination of prejudice under *Strickland*.

■ Initially, as discussed above, we note that a claim of ineffective assistance of counsel can be based on delay, but such

a claim requires that the two-pronged *Strickland* test be applied. However, an ineffective assistance claim can also be based on an attorney's conflict of interest. Here we have a case where the conflict of interest is rooted in the delay—in appellate counsel's dilatory conduct. Although this may create some confusion as to the appropriate analysis necessary to address Mathis's claims, we point out that a criminal defendant would get the same relief if the conflict arose for a reason other than delay. Thus, although the delay and the conflict are closely related in this case, they lead to separate ineffective assistance claims, and it is helpful to recognize the different analysis applicable to each.

■ Although *Strickland* required that criminal defendants asserting a general ineffective assistance of counsel claim show both incompetence on the part of the attorney and prejudice to the defendant, it also recognized that there could be per se sixth amendment violations in cases alleging attorney conflicts of interest. Thus, the Supreme Court established a separate analysis to determine whether a conflict of interest results in a per se violation of the sixth amendment right to counsel. If a criminal defendant can show that his "counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance' ", *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)), "[t]he conflict itself demonstrate[s] a denial of the 'right to have effective assistance of counsel.' " *Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1719 (quoting *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 468, 86 L.Ed. 680 (1942)). This rule rests on the assumption that "some conflicts of interest so affront the right to effective assistance of counsel as to constitute a *per se* violation of the sixth amendment." *United States v. Aiello,* 900 F.2d 528 at 531 (2d Cir.1990) (citing *Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19). If such a conflict exists, the rationale is that there should be no need to show prejudice. *Id.*

However, this rule is difficult to invoke, and the mere possibility of conflict is insufficient. *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719. *See also United States v. Aiello,* 900 F.2d 528, 532 (2d Cir.1990) ("a theoretical or merely speculative conflict of interest by itself never invokes the per se rule"). We have previously applied the per se rule to overturn the conviction of a criminal defendant where the defendant's attorney was disqualified from the practice of law, *Solina v. United States,* 709 F.2d 160, 168 (2d Cir.1983), and where the defendant's attorney was implicated in the same crime for which he was representing his client, *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984). The question for us is whether the specific circumstances of this case rise to the level of egregious conduct found in those cases to justify habeas relief.

■ The district court found that both the disciplinary proceeding filed against Mathis's attorney, Schofield, *and* the possibility of liability for the delay he had caused created an "obvious" and actual conflict of interest sufficient to undermine the court's "confidence in the outcome" of the appeal under the facts and circumstances of this case. It examined the deposition testimony of Schofield and his conduct of the appeal in state court. It rejected the state's argument that the conflict was speculative and found that Schofield had an actual adverse interest in the outcome of Mathis's appeal. The court found that reversal of Mathis's conviction could expose Schofield to liability for his part in the delay since Mathis would have spent years in prison on an erroneous conviction; affirmance, on the other hand, would have served Schofield's interest in avoiding discipline or damages, because it would have allowed the conclusion that the delay, although egregious, had been harmless.

Moreover, the district court found not only that, contrary to Mathis's expressed wishes, Schofield did not consult with him

about any substantive matters, but also that, based on the court's review of the appellate briefs, the poor quality of Schofield's advocacy was disturbing. It also noted that despite the little effort evidenced in the briefs on Mathis's behalf, Schofield waived oral argument, thus concluding that Schofield did not vigorously represent his client. In light of these findings, which are not clearly erroneous, we affirm the judgment of the district court based on its conclusion that Mathis's attorney had an actual conflict of interest sufficient to undermine its confidence in the outcome of the appeal, a conflict that established a per se violation of Mathis's right to effective assistance of counsel.

■ The district court recognized that its decision might "cause many appellants to file disciplinary charges against their attorneys", but it correctly observed that "[s]uch complaints, if unwarranted or brought with a motivation for delay, should not be grounds for [habeas relief]". As the district court noted, Mathis's disciplinary complaint against Schofield was well founded, was based on egregious delay, and resulted in the attorney's being formally admonished by the disciplinary committee. A frivolous complaint against an attorney, or one filed for purposes of delay, or even one filed for the purpose of obtaining new counsel, would not create a conflict of interest warranting habeas relief of the type approved here.

■ In affirming the relief granted in this case, we note again that the statute empowering federal courts to grant the writ of habeas corpus directs the court to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. *See also Simmons*, 898 F.2d at 896. District courts may fashion appropriate relief other than immediate unconditional release. *Preiser v. Rodriguez*, 411 U.S. 475, 487, 93 S.Ct. 1827, 1835, 36 L.Ed.2d 439 (1973); *Simmons*, 898 F.2d at 896. Here, Mathis sought unconditional release and dismissal of the indictment because of the delay, but the district court granted lesser relief, grounded not in delay but in the conflict of interest. It ordered a new appeal coupled with immediate release pending that appeal. Under the unusual circumstances of this case, we find no error or abuse of discretion.

## CONCLUSION

We continue to be disturbed by the prolonged delays in hearing some state criminal appeals, but we have thus far approved only one remedy available to habeas petitioners who claim due process violations based on mere delay: the granting of a conditional writ earlier in the appellate process that requires release unless a time deadline for processing the appeal is met. Although the delays in many of the cases that have come before us have been truly egregious, once the state court affirms the conviction, we have been unable to justify the extraordinary remedy of unconditional release without a showing that the conviction itself was constitutionally deficient.

We affirm the judgment of the district court in this case not because appellate delay justifies release until a new appeal can be processed, but because we cannot say that the district court erred in concluding that Mathis's appellate counsel had an actual conflict of interest that affected the quality of his representation on the appeal. Release, pending a new appeal, of the petitioner, who had already served his minimum sentence, was reasonable interim relief under the circumstances.