**Wendell ELCOCK, Petitioner–Appellant–Cross–Appellee,**

v.

**Robert J. HENDERSON, Superintendent, Auburn Correctional Facility, Respondent–Appellee–Cross–Appellant.**

Nos. 1468, 1719, Dockets 91–2049, 91–2051.

United States Court of Appeals, Second Circuit.

Argued May 21, 1991.

Decided Oct. 17, 1991.

nation.

Ronald Cohen, New York City, for petitioner-appellant-cross-appellee.

Pamela L. Milgrim, Asst. Dist. Atty., Brooklyn, N.Y. (Charles J. Hynes, Dist. Atty., Kings County, Jay M. Cohen, Asst. Dist. Atty., Brooklyn, N.Y., on the brief), for respondent-appellee-cross-appellant.

Before KEARSE, MAHONEY, and SNEED*, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Wendell Elcock is a New York State prisoner whose appeal from his conviction in state court took 8½ years. A due process claim based on that delay was first raised in federal court on a prior appeal to this Court from the dismissal of a petition for habeas corpus on other grounds. *See Elcock v. Henderson*, 902 F.2d 219 (2d Cir.1990) (per curiam). We remanded to the United States District Court for the

---

* Honorable Joseph T. Sneed, of the United States Court of Appeals for the Ninth Circuit, sitting by

designation.

Eastern District of New York for the appointment of counsel and consideration of whether the 8½–year delay violated Elcock's right to due process. On remand, the district court, Eugene H. Nickerson, *Judge*, found due process and Sixth Amendment violations and conditionally granted a writ of habeas corpus, ordering that Elcock be released if a new state-court appeal were not heard by June 1991. Elcock now appeals from so much of the judgment as refused to release him unconditionally, contending that a new appeal will not remedy the violation of his rights. Respondent Robert J. Henderson, Superintendent of the Auburn Correctional Facility (the "State"), contending that the district court erred in finding a due process violation, cross-appeals from so much of the order as requires Elcock's release if a new appeal is not heard. For the reasons below, we vacate the order of the district court and remand for further consideration.

## I. BACKGROUND

Elcock was convicted of murder and assault in New York Supreme Court in 1978. On September 1, 1978, he was sentenced to concurrent terms of not more than 15 years' imprisonment on the assault count and 25 years to life imprisonment on the murder count. He appealed the conviction to the Appellate Division, Second Department ("Second Department"), by filing his notice of appeal on September 11, 1978.

Elcock's trial counsel, Sara Halbert, was assigned to represent him on appeal on November 28, 1979. She did not, however, prosecute the appeal. Elcock moved *pro se* for the appointment of new appellate counsel, and on September 13, 1983, the Second Department appointed Bruce J. Cohen ("Bruce Cohen") to replace Halbert.

In February 1985, Elcock wrote to the Second Department to inquire about the status of his appeal and to complain that Bruce Cohen was not responding to his letters. After repeated prodding from the Deputy Clerk of the Second Department and from Elcock, Bruce Cohen eventually submitted a brief in late July 1986. The 66–page brief made a number of arguments for reversal, contesting, *inter alia*, the validity of pretrial identifications, the sufficiency of the identification evidence at trial, certain evidentiary rulings, aspects of the jury charge, the conduct of the prosecutor, and the propriety of the sentence imposed. No argument was made on the basis of the lengthy delay in the appellate process.

The appeal was finally submitted in late February 1987, and Elcock's conviction was unanimously affirmed on May 18, 1987, *People v. Elcock*, 130 A.D.2d 682, 516 N.Y.S.2d 19 (2d Dep't 1987); leave to appeal to the New York Court of Appeals was denied in the same year, *People v. Elcock*, 70 N.Y.2d 711, 519 N.Y.S.2d 1046, 513 N.E.2d 1314 (1987).

Analyzing these events within the framework set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the district court, in a Memorandum and Order dated January 9, 1991 ("January 1991 Order"), reported at 1991 WL 13975, 1991 U.S. Dist. LEXIS 1136, concluded that the delay of Elcock's appeal amounted to a denial of due process. The court found that the delay of 8½ years was "plainly excessive," that it had been caused by "simple neglect by the court appointed attorneys," and that it was not excused. *Id.* at 3. Finding that Elcock had written to the Second Department several times and to his attorneys numerous times to complain about the slow pace of the appeal, the court concluded that Elcock had "made sufficient efforts to assert his right to a timely appeal" and had "suffered prejudice by experiencing 'unnecessary anxiety and concern.'" *Id.* (quoting *Simmons v. Reynolds*, 708 F.Supp. 505, 510 (E.D.N.Y.1989), *aff'd*, 898 F.2d 865 (2d Cir.1990)).

Relying principally on the district court decision in *Mathis v. Hood*, 87 Civ. 6234, 1990 WL 100869, 1990 U.S.Dist. LEXIS 8474 (S.D.N.Y. July 11, 1990) ("*Mathis I*") (granting habeas), *aff'd*, 937 F.2d 790 (2d Cir.1991) ("*Mathis II*") (collectively "*Mathis*"), the district court here also found that Elcock's appeal had been prejudiced by

what it termed Bruce Cohen's "actual conflict of interest" in representing Elcock on appeal. January 1991 Opinion at 3. The court stated that "[a] successful appeal would have raised serious questions about the three year delay [after Bruce Cohen had been appointed], and might have exposed him to sanction or liability." *Id.,* at 3–4. The court concluded that there had been a per se violation of Elcock's right to the effective assistance of counsel under the Sixth Amendment as applied to the states through the Fourteenth Amendment.

To remedy the constitutional violations, the court conditionally granted Elcock's habeas petition, ordering that Elcock be released "[u]nless within 60 days of this order, new counsel is appointed and perfects the appeal, and the Second Department hears the appeal no later than June, 1991." *Id.,* at 5. The court rejected Elcock's contention that he was entitled to unconditional release. It also observed that its decision did not preclude Elcock from seeking redress for the delay in an action for damages under 42 U.S.C. § 1983 (1988).

The court stayed its conditional release order pending appeal.

## II. DISCUSSION

Elcock appeals from so much of the judgment as denied him unconditional release. He contends that he was entitled to an outright release (1) because of the delay in his appeal, and (2) because his appellate attorneys, having delayed unconscionably in prosecuting his appeal, could not provide him with effective assistance on appeal. The State cross-appeals, contending that the court erred in finding due process and Sixth Amendment violations. For the reasons below, we uphold the district court's ruling that Elcock's due process rights were violated, but we vacate the order of conditional release and remand for further consideration of the Sixth Amendment issue.

### A. *The Due Process Questions*

■ As this Court has made clear, once a state has provided defendants in criminal cases with the right to appeal, "due process requires that an appeal be heard promptly." *Mathis II,* 937 F.2d at 794; *see, e.g., Cody v. Henderson,* 936 F.2d 715, 719 (2d Cir.1991); *Diaz v. Henderson,* 905 F.2d 652, 653 (2d Cir.1990); *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990); *see generally Evitts v. Lucey,* 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985) ("the procedures used in deciding appeals must comport with the demands of the Due Process ... Clause[ ] of the Constitution"). With respect to whether a given delay constitutes a due process violation, we have noted that the analytical framework set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, is generally applicable. *See, e.g., Mathis II,* 937 F.2d at 794; *Cody v. Henderson,* 936 F.2d at 719; *Simmons v. Reynolds,* 898 F.2d at 868. The *Barker v. Wingo* analysis requires exploration of whether the delay was excessive, whether there was an acceptable excuse for it, whether the defendant waived his right to a prompt appeal, and whether he was prejudiced by the delay. We have ruled appellate delays of 6–10 years excessive. *See, e.g., Diaz v. Henderson,* 905 F.2d at 653 (seven years "excessive"); *Simmons v. Reynolds,* 898 F.2d at 868 (six years "clearly excessive"); *Brooks v. Jones,* 875 F.2d 30, 31 (2d Cir.1989) (eight-year delay deemed evidence of "inexcusable neglect").

■ The district court in the present case properly assessed the merits of Elcock's due process claim within this framework. It found that the 8½-year delay was excessive and without excuse. It found that Elcock had made numerous attempts to speed up the process and hence had not waived his rights. And it found that Elcock had suffered prejudice in the form of unnecessary concern and anxiety. The court's findings were sufficient and not clearly erroneous. The State argues, *inter alia,* that because Elcock did not adequately demonstrate that the merits of his appeal were affected by the delay, the

finding of prejudice was error. We agree with the premise but not the conclusion. "Prejudice to the outcome of the appeal is not a necessary condition" for finding that appellate delay has resulted in a denial of due process. *Cody v. Henderson*, 936 F.2d at 720. A proper conclusion that there was prejudice may be based on the finding that the petitioner experienced "unnecessary anxiety and concern." *Simmons v. Reynolds*, 708 F.Supp. 505, 510 (E.D.N.Y.1989), *aff'd*, 898 F.2d at 868.

■ On the other hand, we also reject Elcock's contention that such prejudice as was found here warranted the remedy of unconditional release.

> The *Barker* analysis goes only to the question of whether a due process violation has occurred.... A separate and distinct inquiry ... is required to determine the appropriate remedy for the violation.

*Mathis II*, 937 F.2d at 794. Even where a habeas petitioner has demonstrated that his due process rights have been violated by a delay in the appellate process, we have "not consider[ed] th[e] delay, without more, to be a sufficient basis for release from custody" but have expressly rejected the proposition that mere lapse of time is a sufficient basis for the granting of habeas. *Id.* We have ruled that "some showing of prejudice *to the appeal* is necessary for habeas relief," *id.* (emphasis added); such a petitioner is not entitled to unconditional release on account of delay in his appeal "unless [he] can demonstrate that the appellate delay caused substantial prejudice to the disposition of his appeal." *Cody v. Henderson*, 936 F.2d at 719. In defining substantial prejudice, we have stated that the petitioner must show "a reasonable probability that, but for the delay, the result of the appeal would have been different." *Mathis II*, 937 F.2d at 794.

■ In the present case, the district court found that the delay had caused Elcock unnecessary emotional distress. It did not find that the delay had a detrimental impact on the outcome of Elcock's appeal. Elcock has argued here that his appeal was detrimentally affected because Bruce Cohen, himself having delayed the appeal for three years, was as a practical matter foreclosed from arguing that Elcock was entitled to reversal of his conviction on account of either the appellate delay of Halbert or the total 8½-year delay. We do not regard this as a showing of prejudice to the outcome of the appeal. While the state courts would recognize that an undue delay in the appellate process could violate a defendant's due process rights, *see People v. Cousart*, 58 N.Y.2d 62, 68, 458 N.Y.S.2d 507, 510, 444 N.E.2d 971 (1982); *People v. Collier*, 131 A.D.2d 864, 865, 517 N.Y.S.2d 224, 225 (2d Dep't 1987), they, like this Court in *Mathis II*, do not consider such a violation to be a ground for vacating the conviction unless the defendant can show that the delay resulted in prejudice to the appeal itself, *see People v. Collier*, 131 A.D.2d at 865, 517 N.Y.S.2d at 225; *see also People v. Cousart*, 58 N.Y.2d 62, 68–69, 458 N.Y.S.2d 507, 510–11, 444 N.E.2d 971 (1982) (where original delayed appeal resulted in reversal and remand for new trial, the defendant must, in order to have indictment dismissed on ground of delay, show that delay resulted in prejudice to his rights in the new proceedings in the trial court). Elcock's present counsel has not informed us of any argument available to Bruce Cohen to show that Elcock's appeal was prejudiced by the delays. Thus, the fact that Bruce Cohen would have been disinclined to make a delay argument does not persuade us that there is a reasonable probability that, but for the delay, the result of Elcock's appeal would have been different. Since the record contains no basis for concluding that the outcome of the appeal would likely have been altered by promptness in the appellate process, we conclude that the district court properly denied Elcock's request for unconditional release.

■ We have some question, moreover, as to the propriety of even a conditional order of release in the present case. The purpose of a conditional release is to require the state, where it has not yet heard the prisoner's appeal, to do so within a specified time in order to cease its due

process violation. When the state court has already heard the belated appeal, and there was no constitutional violation other than the due process deprivation stemming from the delay, the issuance of a conditional writ, requiring a new appeal, is inappropriate. *See, e.g., Mathis II,* 937 F.2d at 794; *Diaz v. Henderson,* 905 F.2d at 653; *Simmons v. Reynolds,* 898 F.2d at 869. Accordingly, we turn to the other ground for release adopted by the district court, *i.e.,* that Elcock was denied the effective assistance of counsel.

## B. *The Sixth Amendment Issues*

In ruling that Elcock was entitled to a conditional release on the ground that his Sixth Amendment rights had been violated, the district court ruled that Bruce Cohen had an "actual conflict of interest" because "[a] successful appeal would have raised serious questions about the three year delay [following Bruce Cohen's own appointment], and might have exposed him to sanction or liability." January 1991 Opinion at 3–4. The court's reasoning was that the attorney may have made his presentation to the Second Department less persuasive than it otherwise could have been, hoping for an affirmance in order to establish a foundation for arguing that his own dilatoriness was not prejudicial to his client, since "[h]e doubtless knew that he might face discipline or criticism if the appeal were successful." *Id.* at 4. In reaching this conclusion, the court relied on language in the district court decision in *Mathis I,* which has since been affirmed by this Court on a quite limited basis.

In *Mathis,* the prisoner, convicted in state court of robbery, was sentenced in 1981. Notwithstanding (a) his active prodding of the first attorney assigned to him, (b) the assignment of new counsel, one Schofield, (c) his prodding of Schofield, and (d) his frequent communications to the Appellate Division, First Department, concerning the status of his appeal, the appeal was not decided for six years. During the delay occasioned by Schofield's failure to submit a timely brief, Mathis filed a grievance against Schofield with the Disciplinary Committee of the First Department. After Mathis filed his grievance, Schofield filed a brief in support of Mathis's appeal from his conviction.

The district court in *Mathis I* found that Schofield had a conflict of interest that undermined confidence in the outcome of Mathis's appeal, for if the appeal were successful, the grievance charging him with inexcusable delay could well be upheld. The court cited substantial evidence in support of its finding. For example, in deposition testimony Schofield acknowledged both that he knew of the grievance filed against him before completing his preparation of Mathis's appeal, and that this affected his conduct of the appeal. Thus, Schofield testified that he ignored Mathis's requests to see a copy of the brief before it was filed because he felt that he was in a "catch 22" and that he might "be charged with two or three additional months [of delay] which [were] really not my responsibility." *Mathis I,* 1990 WL 100869, 1990 U.S.Dist. LEXIS at 21. When asked whether the fact that Mathis had filed a grievance against him had caused him to speed his work in Mathis's case, Schofield responded: "Yes, I wanted to get rid of his case as well as all the other cases I had." *Id.* at 17 n. 9.

The district court also found the quality of Schofield's advocacy on Mathis's behalf to be "disturbing." It found that Schofield's brief was "poorly organized" and that "parts of it [were] inarticulate to the point of being incomprehensible." *Id.* at 19 n. 14. In addition, despite the paucity of effort evinced by the briefs, Schofield waived oral argument of the appeal. Concluding Schofield had an actual conflict of interest, the court conditionally granted Mathis's habeas petition, ordering that his conviction be vacated unless the state court granted him a new appeal within a certain time.

In affirming the conditional granting of habeas to Mathis, we upheld the findings of the district court as to the evidently poor

1010

quality of representation given by Schofield, and concluded that

> [i]n light of these findings, which are not clearly erroneous, we affirm the judgment of the district court based on its conclusion that Mathis's attorney had an actual conflict of interest sufficient to undermine its confidence in the outcome of the appeal, a conflict that established a per se violation of Mathis's right to effective assistance of counsel.

*Mathis II,* 937 F.2d at 796. We emphasized the fact that by the time Schofield filed the first appellate brief more than two years after his appointment, Mathis had already filed a well founded disciplinary grievance against him; we also noted that the filing of an unfounded grievance would not suffice to establish an actual conflict:

> The district court recognized that its decision might "cause many appellants to file disciplinary charges against their attorneys", but it correctly observed that "[s]uch complaints, if unwarranted or brought with a motivation for delay, should not be grounds for [habeas relief]". As the district court noted, Mathis's disciplinary complaint against Schofield was well founded, was based on egregious delay, and resulted in the attorney's being formally admonished by the disciplinary committee. A frivolous complaint against an attorney, or one filed for purposes of delay, or even one filed for the purpose of obtaining new counsel, would not create a conflict of interest warranting habeas relief of the type approved here.

*Id.* We concluded that

> [w]e affirm the judgment of the district court in this case not because appellate delay justifies release until a new appeal can be processed, but because we cannot say that the district court erred in concluding that Mathis's appellate counsel had an actual conflict of interest that affected the quality of his representation on the appeal.

*Id.*

 The district court's decision in the present case was rendered prior to our affirmance in *Mathis II,* and it does not contain findings of the sort that formed the basis for that affirmance. There is no finding that Elcock had initiated a disciplinary proceeding against Bruce Cohen; rather, the implication is to the contrary, as the court noted that the district court in *Mathis I* had indicated "that a conflict could be found even where no formal complaint was filed." January 1991 Opinion at 4. Nor did the district court make any other findings that demonstrated the existence of an actual conflict. It did not find that the lengthy brief submitted by Bruce Cohen in support of Elcock's state-court appeal, which argued a variety of issues with frequent citation to the record and legal authorities, was of poor quality or that there were any defects in representation other than the delay itself.

We reject the district court's view that, in the absence of an actual grievance complaint, an actual conflict resulted from the delay simply because of the possibility of grievance proceedings in the event the appeal was successful. Where no disciplinary complaint has been filed, the conflict is more potential than actual. Yet that potential is inherent in the representation when counsel has unduly delayed. There is no question that the attorney Schofield, in *Mathis,* had inordinately delayed the appeal, yet we ruled in *Mathis II* that delay itself, with only an inchoate possibility of a disciplinary complaint, does not, without more, create a sufficient conflict of interest to violate the defendant's Sixth Amendment rights. *See Mathis II,* 937 F.2d at 795 ("the mere possibility of conflict is insufficient").

We conclude that this matter should be remanded to the district court for further consideration in light of the standards enunciated in *Mathis II* and the present opinion. On remand, the district court should, to the extent that it has not already done so, inquire into the quality of Bruce Cohen's representation and into such other matters concerning the conflict-of-interest issue as may be warranted and should make new findings if appropriate. If it finds that no grievance (or other formal

complaint such as one in a civil action under § 1983) was filed prior to the perfection of the appeal and finds that the quality of Bruce Cohen's representation was not poor, the court should, assuming it finds no other evidence of an actual conflict, conclude that there was no Sixth Amendment violation within the *Mathis II* framework. If the court finds that no grievance or other formal complaint was filed but that the quality of Bruce Cohen's representation was sufficiently poor to undermine confidence in the outcome of the appeal, the court should again conditionally grant the writ. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2d Cir.1990) (*Strickland* test, adopted in context of claims of inadequate representation at trial, is also applicable to claims of inadequate representation on appeal). The court should also conditionally grant the writ if its confidence in the outcome of the appeal is not undermined but it finds that Bruce Cohen's representation of Elcock was of poor quality and that that poor quality was caused by Bruce Cohen's fear of potential disciplinary or other proceedings against him as a result of the delay. If no new findings favorable to Elcock are appropriate, the court should dismiss the petition.

## CONCLUSION

The judgment of the district court is vacated and the matter is remanded for further proceedings not inconsistent with the foregoing. No costs.