Gerald EINAUGLER, M.D., Plaintiff,

v.

Michael J. DOWLING, Commissioner, New York State Department of Social Services, James P. White, Director, Bureau of Program Integrity, Office of Quality Assurance and Audit, New York State Department of Social Services, Donna Shalala, Secretary of the United States Department of Health and Human Services, Linda Little, Regional Inspector General, United States Department of Health and Human Services, and Bruno Varano, Assistant Regional Inspector General, United States Department of Health and Human Services, Defendants.

Gerald EINAUGLER, M.D., Petitioner,

v.

Edward J. KURIANSKY, Special Prosecutor for Medicaid Control of the State of New York, Oliver Koppell, Attorney General of the State of New York, Michael J. Dowling, Commissioner, New York State Department of Social Services, and James P. White, Director, Bureau of Program Integrity, New York State Department of Social Services, Respondents.

Nos. 94 CV 2484 (ERK), 94 CV 2737 (ERK).

United States District Court, E.D. New York.

Aug. 20, 1994.

James D. Harmon, Jr., New York City, for plaintiff.

Donald H. Zuckerman, New York City, for defendant Kuriansky.

Zachary Carter, U.S. Atty., E.D.N.Y. by Richard Molot, Asst. U.S. Atty., Brooklyn, NY, for Federal defendants.

Gerald Slotnik, New York City, for defendants Koppell, Dowling & White.

KORMAN, District Judge.

On June 4, 1993, after a jury trial in the New York State Supreme Court, Kings County, Dr. Gerald Einaugler was found guilty of reckless endangerment in the second degree, N.Y.Penal Law § 120.20 (McKinney 1987), and wilful violation of the public health laws, N.Y.Pub.Health Law § 12–b(2) (McKinney 1990), in a prosecution alleging patient neglect. On July 22, 1993, Einaugler was sentenced on each count to 52 consecutive weekends of incarceration, the sentences to run concurrently. Justice Vincent R. Balletta of the Appellate Division, Second Department, stayed execution of the sentences, pending appeal. Despite Einaugler's thrice-repeated pleas for an expedited hearing, *see* Ex.'s A, B and C to Petition for a Writ of Habeas Corpus (Case No. 94–CV–2737) ("Petition"), the Appellate Division has yet to set a date for oral argument on the appeal.

On June 16, 1993, based solely upon his conviction, the New York State Department of Social Services ("DSS"), as required by federal law, excluded Einaugler from participating in the state's Medicaid program, a

consequence which impacted roughly one half of Einaugler's medical practice. *See* Petition, ¶ 14. On June 2, 1994, almost one year after his conviction, the United States Department of Health and Human Services ("HHS") notified Einaugler that, based solely upon his conviction, it was required, pursuant to 42 U.S.C. § 1320a–7(a) (1988), to exclude him from participation in both the Medicare and Medicaid programs for a period of at least five years, the exclusion to take effect on June 22, 1994. *See* Ex. F to Affirmation of James D. Harmon, Jr., May 19, 1994 (Case No. 94–CV–2484). The practical effect of this exclusion, according to Einaugler, whose medical practice focuses almost exclusively on elderly patients, is the termination of his practice of medicine. Petition, ¶¶ 14 and 23.

Einaugler then sought, *inter alia,* to enjoin HHS and DSS from excluding his participation in the Medicare and Medicaid programs, pending resolution of the direct appeal of his conviction. *See* Complaint (Case No. 94–CV–2484). At an expedited hearing on Einaugler's motion for a temporary restraining order, however, it became clear that the statute, pursuant to which Einaugler would be excluded from Medicare and Medicaid, did not provide for a stay of the mandated suspension while petitioner challenged his conviction on appeal.[1] The problem of the delay in the hearing and determination of Einaugler's direct appeal, however, could be addressed in a habeas corpus proceeding.

While the writ of habeas corpus may be extended only to a prisoner who "is in *custody* in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3) (1988) (emphasis added), "a petitioner enlarged on his own recognizance pending execution of sentence [is] in custody within the meaning" of the federal habeas corpus statute. *See Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 300, 104 S.Ct. 1805, 1809, 80 L.Ed.2d 311 (1984) (citing *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973)). Accordingly, petitioner's present status satisfies the "in custody" requirement

---

1. The statute provides that such exclusion shall take effect, *inter alia,* upon a "finding of guilt" and "regardless of whether there is an appeal pending." 42 U.S.C. § 1320a–7(i)(1)–(2).

of § 2241(c)(3), even though the execution of his sentence has been stayed pending appeal.

Moreover, the delay in the hearing and determination of the appeal appeared to provide ample cause for some form of equitable relief pursuant to 28 U.S.C. § 2254 (1988). Indeed, respondents in the habeas proceeding offer no explanation for the delay. Instead, they reject the notion that the state appellate process is ineffective, and argue that the "Appellate Division's computer entries demonstrate that [Einaugler's] appeal has been closely monitored" from its inception to the present. Respondent's Memorandum of Law ("Resp't Mem.") at 4–5. Because this is of little solace to Einaugler, who is facing collateral consequences that threaten to terminate his means of livelihood, Einaugler seeks to set aside the judgment of conviction. In the alternative, he seeks a stay of its collateral consequences until the New York appellate courts have had a chance to hear and decide his appeal on the merits.

Einaugler alleges both that his conviction was obtained in violation of the laws of the United States, and that the continuing delay in the hearing of his appeal, an injury exacerbated by the collateral consequences of his conviction imposed by HHS and DSS, violates the Due Process and Equal Protection Clauses of the Constitution.

■ I heard oral argument on the injunction and habeas corpus application on July 15, 1994. At that time, I proposed to enter an order setting aside the judgment of conviction unless the Appellate Division decided the appeal within five months. In the interim, I proposed to enjoin the Secretary of Health and Human Services (the "Secretary") from implementing the suspension of petitioner's participation in the Medicare and Medicaid programs. The Secretary vigorously opposed this relief on the grounds that Congress mandated petitioner's exclusion upon the event of his conviction. The position of the Secretary, while supported by the language of the statute, see 42 U.S.C. § 1320a–7(a), seemed particularly inconsistent with her conduct in this case.

Specifically, despite the Secretary's insistence that she did not have the discretion to consent to an order that would suspend the enforcement of the mandate of § 1320a–7(a)—which she maintained required Einaugler's suspension from the Medicare and Medicaid programs from the moment the jury returned a verdict of guilty on June 4, 1993—the Secretary conceded that she had delayed implementing the suspension for over one year for reasons that can only be offered by an incompetent and insensitive bureaucracy. According to the Assistant United States Attorney, who spoke for the Secretary, the Secretary had been certain from the outset that Einaugler would be suspended for a period of at least five years. Instead of suspending him immediately, however, she waited twelve months to effect the suspension, so that she could decide whether Einaugler should be suspended for just five years, or a period in *excess* of five years. *See* Tr. of June 21, 1994 at 7. The supposed reason for the delay was that there was just "one person, one analyst, for all of New York and New Jersey" that has the authority to review cases of this nature. *Id.* at 8.

The net effect of the Secretary's position here is as follows: She may fail to comply, for over one year, with what she alleges is the unqualified command of Congress that petitioner be suspended from the Medicare and Medicaid programs. On the other hand, she is legally obligated to oppose a delay in implementing the suspension so that petitioner may obtain the appellate review to which he is entitled, and thereby give effect to the congressional policy favoring exhaustion of state remedies before resort may be had to habeas corpus review. The Secretary's position is all the more troubling because not only has New York State suspended all of the direct consequences of Einaugler's conviction pending appeal, but the very sentence of 52 weekends enabled Einaugler to continue practicing medicine.

Unfortunately, I conclude that I have no more power than the Secretary had to stay the congressionally mandated suspension. Section 1320a–7 does not by its terms proscribe a stay of the mandatory suspension in the event of a habeas corpus proceeding.

*See* 42 U.S.C. § 1320a–7(i). Nevertheless, a petition for a writ of habeas corpus "is akin to an appeal by petitioner from the affirmance of the judgment of conviction...." *Pinkney v. Keane,* 737 F.Supp. 187, 196 (E.D.N.Y.), *aff'd,* 920 F.2d 1090, 1098–99 (2d Cir.1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991). It is therefore unlikely that Congress intended that a habeas corpus proceeding could provide an occasion for staying the mandatory suspension, when Congress explicitly indicated that the pendency of an appeal would not have such an effect. Nevertheless, there are a number of alternative remedies pursuant to 28 U.S.C. § 2254 that are available to limit the extreme prejudice suffered by Einaugler if, as he alleges, he has been deprived inexcusably of his right to appeal within a reasonable time from the judgment of conviction.

■ The first alternative, assuming the delay is of sufficient magnitude, is to forgo the requirement that petitioner exhaust his New York appellate remedies, and consider his claim that his conviction was obtained in violation of the Constitution and laws of the United States. It has long been recognized that under special circumstances a federal court may consider the merits of a habeas corpus petition "notwithstanding the lack of complete exhaustion." *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987); *see also Frisbie v. Collins,* 342 U.S. 519, 521–22, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952). The federal statute itself provides that a habeas petitioner need not exhaust state remedial procedures in "circumstances rendering such process ineffective to protect the rights of the [petitioner]." 28 U.S.C. § 2254(b). Pursuant to this authority, federal courts have waived the exhaustion requirement for habeas petitioners whose criminal appeals have languished in state courts for inexcusable periods of time. *See, e.g., Simmons v. Reynolds,* 898 F.2d 865, 867 (2d Cir.1990) (six years); *Brooks v. Jones,* 875 F.2d 30, 31 (2d Cir.1989) (eight years).

While the Second Circuit has declined "to define precisely, a specific interval of time after which a habeas petition based on delay of a state prisoner's appeal would excuse compliance with the federal exhaustion requirement," it has counseled that a petitioner should not have to wait "even three or four years before enlisting federal aid to expedite an appeal." *Simmons,* 898 F.2d at 870. The Tenth Circuit addressed this issue in *Harris v. Champion,* 15 F.3d 1538 (10th Cir.1994), after a thorough review of the case law in all of the circuits. *See id.* at 1555–56 (collecting cases in which at least five different circuit courts of appeal had remanded for consideration of whether exhaustion requirement should be waived in light of state court delays ranging from fifteen, seventeen, and eighteen months to over one to two years). The Tenth Circuit held in *Harris* that "delay in adjudicating a direct criminal appeal beyond two years from the filing of the notice of appeal gives rise to a presumption that the state appellate process is ineffective." *Id.* at 1556. This presumption is rebuttable; the court recognized that cases may arise in which exhaustion may be excused for delays of less than two years. *Id.*

In the instant case, Einaugler filed his notice of appeal on the day his judgment of conviction was entered thirteen months ago. *See* Ex. A, ¶ 10, to Affirmation of James D. Harmon, Jr., July 8, 1994. On three separate occasions, with little support from the Special Prosecutor, he filed for a preference that would expedite the hearing of his appeal, and each of these requests has been rejected by the Appellate Division. The earliest date that the appeal can be heard is September 1994, although it has not been calendared and there is no assurance that it will be heard even then. Thus, if the Appellate Division takes the time necessary to resolve the substantial issues raised by Einaugler, it is unlikely that the appeal will be argued and decided until sometime between sixteen and eighteen months after the notice of appeal was filed. Such delay falls within the time-period within which the failure to exhaust is excusable. *See Harris,* 15 F.3d at 1556.

Even if the exhaustion requirement is waived here, however, the relief Einaugler could obtain would not be complete because consideration of his claims would be limited to those that rise to the level of a federal due process violation. *See* 28 U.S.C. §§ 2241,

2254(a); *Estelle v. McGuire,* 502 U.S. 62, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Yet the consideration of even those claims would be circumscribed by the various hurdles a petitioner must overcome in establishing both that the alleged errors violated the Due Process Clause and that they affected the outcome of the proceedings. *See Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). More significantly, this alternative is particularly ill-suited to this case which involves significant issues of New York law and policy, along with traditional trial errors, to which petitioner is entitled to the full and complete review that is available on direct appeal.

There is, to be sure, a "backdoor" approach to reaching even the issues of New York law raised by the petitioner in this proceeding. Specifically, if petitioner has been deprived of his right to a timely appeal of his conviction, the error could be viewed as harmless if the claims raised on appeal by petitioner are without merit. *See Muwwakkil v. Hoke,* 968 F.2d 284, 285 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). Such an inquiry necessarily involves a review the merits of any state law claims. The cases where such a harmless error analysis was undertaken have predominantly been those in which the petitioner has sought relief after the New York appellate courts had decided his direct appeal adversely to him. *See, e.g., Cody v. Henderson,* 936 F.2d 715, 716 (2d Cir.1991). They have not involved an initial review of state law claims in a federal habeas corpus proceeding to determine whether an ongoing delay is harmless.

▇ The considerations of policy mitigating against review of state law claims are obvious. It is unwise as a matter of policy to substitute habeas corpus proceedings for direct appellate review. Moreover, as Chief Judge Newman recently observed, federal courts are poor predictors of state law. *See Jameson v. Coughlin,* 22 F.3d 427, 430 n. 2 (2d Cir.1994), *petition for cert. filed,* (U.S. July 11, 1994) (No. 94–5173). In the context of the present case, which draws uniquely on issues of state law and policy, *see, e.g.,* Brief of Amici Curiae The Medical Society of the State of New York, The New York State Society of Internal Medicine, The Medical Society of the County of Kings, and the American Medical Association at 2 ("[F]or apparently the first time in the State of New York, a physician has been criminally charged and convicted on the theory that the manner in which he exercised his professional judgment violated the law."), initial federal review of state law claims would deprive petitioner of his right to have these issues determined by the judges most competent to do so.

▇ This leaves a third alternative, for which there is ample precedent: a conditional order setting aside the judgment of conviction unless the direct appeal is heard within a reasonable period of time. *See Diaz v. Henderson,* 905 F.2d 652, 654 (2d Cir.1990). Such an order limits, if it does not avoid altogether, inexcusable administrative delays in the state appellate process, and shows sufficient respect for the state tribunals by affording them a reasonable time to hear the appeal. On the other hand, it places upon them the ultimate responsibility for the order vacating the conviction if the appeal is not heard within a reasonable time.

While respondents argue that Einaugler may not obtain relief on his petition for habeas corpus unless he demonstrates prejudice to the appeal itself, *see* Resp't Mem. at 6–8, the cases upon which respondents rely simply hold that, *after* the state appellate courts have affirmed a conviction on the merits, the delay which may have occurred prior to adjudication of the appeal cannot be the sole basis for an unconditional release from custody. *See, e.g., Elcock v. Henderson,* 947 F.2d 1004, 1008–09 (2d Cir.1991). The law is clear, however, that a defendant need not demonstrate prejudice to the appeal itself in order to obtain relief that will hasten the appeal or obviate the prejudice to him while the appeal languishes.

As the Court of Appeals explained in *Elcock,* the purpose of a conditional remedy "is to require the state, where it has not yet heard the prisoner's appeal, to do so within a

specified time in order to cease its due process violation." 947 F.2d at 1008–09. Prejudice to the appeal itself is not a necessary precursor to issuance of a conditional writ because, should the writ be realized, its principal justification would be "that the state court has purposely allowed the continuation of a due process violation after the district court gave it notice that failure to provide a prompt appeal would result in invalidation of its judgment of conviction." *See Cody*, 936 F.2d at 720–21.

The present case is not unlike that presented in *Wheeler v. Kelly*, 639 F.Supp. 1374 (E.D.N.Y.1986), *aff'd*, 811 F.2d 133 (2d Cir. 1987). The petitioner in *Wheeler* sought a writ of habeas corpus, five years after his conviction, on the ground that the state courts had not yet rendered a decision on his appeal. 639 F.Supp. at 1375–77. Judge Wexler granted the writ conditionally and ordered that petitioner be retried unless the Appellate Division decided petitioner's appeal within less than three months of Judge Wexler's decision. *Id.* at 1382. Although the Appellate Division ultimately affirmed the conviction within the prescribed period, on petitioner's appeal of Judge Wexler's decision (on the grounds that the retrial should have been granted outright instead of conditionally), the Court of Appeals affirmed the remedy provided by Judge Wexler.

In this case, the State of New York has acted to limit the possibility that Einaugler could serve his sentence in full while the appeal languished. *Cf. Muwwakkil v. Hoke*, No. 90–CV–2062 (E.D.N.Y. Nov. 19, 1990) (petitioner released on bond pending determination of appeal), *aff'd*, 968 F.2d 284 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). Under the unusual circumstances here, however, petitioner is faced with significant collateral consequences as a result of his conviction. While he will be paid for the services he renders to Medicare and Medicaid patients if he is successful on appeal, in the meantime he is being deprived of his livelihood. It is, therefore, necessary to determine whether

petitioner has suffered the kind of delay that would justify a conditional writ.

■ Such delay is clearly present here. Although the Constitution does not afford a defendant the right to appeal a conviction, once provision is made for the right to appeal, such an appeal must comport with the constitutional demands of due process and equal protection of the law. *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985). Among the protections afforded by the due process clause is "the right to a reasonably timely appeal." *Cody*, 936 F.2d at 719.

■ To assess the "reasonableness" of the time taken to adjudicate a habeas petitioner's direct criminal appeal, federal courts have applied the four-factor test devised by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether the Sixth Amendment right to speedy trial has been violated. Specifically, the following factors must be balanced: 1) the length of the delay; 2) the justification for the delay; 3) the assertion of the right to a timely appeal; and 4) the prejudice occasioned by the delay. *See Simmons*, 898 F.2d at 868 (citing *Barker*, 407 U.S. at 530–33, 92 S.Ct. at 2191–93).

While the projected delay in this case is not as extreme as some of the previous cases in which appellate delay has given rise to a due process violation, *see, e.g., Cody*, 936 F.2d at 719 (nine to ten years); *Simmons*, 898 F.2d at 867 (six years), it is within the period of time considered by the courts to be indicative of a violation of due process. *See, e.g., Burkett v. Fulcomer*, 951 F.2d 1431, 1445–46 (3d Cir.1991) (eighteen-month delay between sentencing and appellate decision constituted due process violation), *cert. denied*, —— U.S. ——, 112 S.Ct. 3055, 120 L.Ed.2d 921 (1992); *see also Harris*, 15 F.3d at 1561 (holding two-year delay created rebuttable presumption of due process violation and citing cases in which delays of seventeen-to eighteen-months either "gave rise to" or "warranted inquiry" into possible due process violation); *Coe v. Thurman*, 922 F.2d 528, 531 (9th Cir.1990) (noting that while "four years is an alarming amount of time" for appellate delay, "there is no talismanic

number of years or months, after which due process is automatically violated").

Moreover, no explanation has been provided by respondent for a delay of the kind that has been commonplace. *See, e.g., Stubbs v. Leonardo,* 973 F.2d 167, 169 (2d Cir.1992) ("we remain concerned about the pattern of state court appellate delays in criminal cases"); *Simmons,* 898 F.2d at 869 ("The problem of excessive delay of appeals from state convictions has plagued state prisoners, state courts, and federal courts too long."); *Mathis v. Hood* ("*Mathis I*"), 851 F.2d 612, 615 (2d Cir.1988) ("There is a crisis in the First and Second Departments.... [due to] extraordinary delays which infect the system....").

Nor is this a case where petitioner has sat on his hands. Einaugler has been vigilant in asserting his right to a timely appeal. *See Mathis v. Hood* ("*Mathis II*"), 937 F.2d 790, 794 (2d Cir.1991) ("If the defendant does not act quickly to require that his appeal be heard, he cannot later argue that he is entitled to release because the state court took too long to hear his appeal."). He has filed three times for an expedited hearing, all to no avail. Indeed, respondent may have contributed to the delay by failing to support vigorously petitioner's request that the case be calendared for argument expeditiously. The Special Prosecutor took no position on the first request for an expedited hearing. While he joined conditionally in Einaugler's second request, he not only resumed his posture of indifference to the third request, but he actually urged, unsuccessfully, that the Appellate Division "preclude [Einaugler] from making any further applications of this nature in this case." Affirmation of James D. Harmon, Jr., July 8, 1994 at ¶ 6 (citing Affidavit of Donald H. Zuckerman, March 30, 1994 at 2, 4).

The prejudice to petitioner from the delay is apparent. Petitioner, a physician, has been prosecuted and convicted for conduct arising out of his work. In formulating his sentence, however, the sentencing court—

likely influenced by the several patients who testified on Einaugler's behalf—made it possible for petitioner to continue to practice medicine by limiting his confinement to 52 consecutive *weekends* in jail. Einaugler's conviction has, nevertheless, resulted in his exclusion from Medicaid for the past year, withdrawal of his hospital and nursing home medical privileges at several institutions, continuing harm to his professional reputation, and exclusion for the next five years from both Medicare and Medicaid. Petition, ¶ 41(a). As Einaugler put it in his affidavit in support of his motion for an expedited appeal:

> Exclusion from both Medicaid and Medicare will cause me to cease practicing medicine. I will be forced to close my office and to lay off two employees who depend on me for their livelihood. I will be required to find work in another field in order to support my family. For someone of my age, the prospects of doing so are dismal at best.

Affidavit of Gerald Einaugler, March 18, 1994 at ¶ 6, Ex. C to Affirmation of James D. Harmon, Jr., July 8, 1994. While research has revealed no similarly situated habeas corpus petitioner, under these unusual circumstances Einaugler is subject to an imposition of a burden that the right to a speedy appeal was designed to avert. *Cf. Barker,* 407 U.S. at 532, 92 S.Ct. at 2193 (noting that prejudice from pretrial delay includes incarceration that "often means loss of a job"). Moreover, it is also safe to assume that Einaugler has been burdened with the kind of "concern and anxiety" that is only prolonged by further delay.[2] *See Yourdon v. Kelly,* 769 F.Supp. 112, 115 (W.D.N.Y.1991) (assuming anxiety of petitioner based upon circumstances of delay), *aff'd,* 969 F.2d 1042 (2d Cir.1992) (table).

In light of the foregoing circumstances, I find that New York State's procedures are "ineffective to protect the rights of the [petitioner]." 28 U.S.C. § 2254(b). Accordingly,

---

**2.** Arguably, if Einaugler's conviction was lawfully obtained, then the burdens he has suffered as a result thereof would not be unlawful. To satisfy this prong of the *Barker* test, however, a petitioner must merely assert "a colorable state or federal claim that would warrant reversal" of his or her conviction. *Harris,* 15 F.3d at 1565. Einaugler has asserted several such claims. Indeed, it is presumably for this reason that the Appellate Division has stayed the execution of his sentence.

pursuant to my authority to dispose of this matter "as law and justice require," 28 U.S.C. § 2243 (1988), it is ordered that if the Appellate Division does not hear and decide the appeal in this case before December 31, 1994, the petition will be granted and the conviction will be set aside. In addition, my order of June 24, 1994, which granted minimal relief not inconsistent with 42 U.S.C. § 1320a–7(a), to which there was no serious objection, shall remain in effect until December 31, 1994. The remaining relief requested by Einaugler in his action for injunctive and other relief is denied.

SO ORDERED.