**William CODY, Petitioner–Appellee,**

v.

**Robert J. HENDERSON, Warden, Auburn Correctional Facility, Respondent–Appellant.**

No. 1180, Docket 90–2578.

United States Court of Appeals, Second Circuit.

Argued March 12, 1991.

Decided June 26, 1991.

Joseph M. Latino, White Plains, N.Y., Asst. Dist. Atty. of Westchester County

(Carl A. Vergari, Dist. Atty. of Westchester County, Richard E. Weill, Second Deputy Dist. Atty., of counsel), for respondent-appellant.

Charles E.F. Millard, Jr., New York City (Davis Polk & Wardwell, Ivor C. Wolk, Frederick R. Kessler, Ogden N. Lewis, of counsel), for petitioner-appellee.

Before FEINBERG, TIMBERS and NEWMAN, Circuit Judges.

FEINBERG, Senior Circuit Judge:

Respondent-appellant Robert J. Henderson, Warden of the Auburn Correctional Facility, appeals from a judgment of the United States District Court for the Southern District of New York in October 1990, Vincent L. Broderick, J., granting petitioner-appellee William Cody's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Judge Broderick granted the petition on the ground that extensive delay in the processing of Cody's criminal appeal in the New York State courts violated his constitutional right to due process, even though the New York State Appellate Division, Second Department (Appellate Division), affirmed Cody's conviction a few months after he brought his habeas petition. Appellant Warden argues that Cody is not entitled to habeas relief because he failed to establish that the delayed disposition of his appeal in the state courts prejudiced his appeal. For reasons given below, we vacate the judgment of the district court and remand with instructions to allow Cody the option of recasting his habeas petition as an action for damages pursuant to 42 U.S.C. § 1983.

## I. Background

In 1978, William Cody was indicted in Westchester County on charges of attempted robbery in the first degree, burglary in the second degree, attempted grand larceny in the second degree and unlawful imprisonment in the first degree. The indictment arose out of the robbery of the home of actor Hume Cronyn, during which Cody gagged and handcuffed Cronyn, his secretary and a real estate broker and threatened two of the three at gunpoint. In June

1979, Cody pled guilty to the single charge of attempted robbery in the first degree in exchange for dismissal of the other counts of the indictment. Cody was sentenced in July 1979 to a term of imprisonment of six to 12 years, to run consecutively to parole time owed by Cody from a prior conviction.

On July 18, 1979, a notice of appeal was filed on Cody's behalf. In February 1980, Cody moved for permission to proceed in forma pauperis and for the assignment of appellate counsel. The Appellate Division granted the motion in March 1980 and assigned Alton Maddox, Jr., Esq., as counsel. At the same time, the Appellate Division ordered the court stenographer to make, certify and file within 60 days the typewritten transcripts of the minutes of all the proceedings below. In March 1981, the Appellate Division also ordered the court stenographer to produce two copies of the transcripts of a *Wade* hearing that had been conducted shortly before Cody's guilty plea and to provide those transcripts to Maddox without cost. Despite these two orders, the transcripts still had not been filed with the Clerk of the Appellate Division as of July 6, 1984, almost five years after Cody's original notice of appeal. Also, Maddox apparently did not receive a copy of the complete minutes until October 1985.

Cody escaped from state prison in July 1980 and was not returned until October 1981. While out of prison, he was convicted of assault in the second degree in Bronx County, for which he received a sentence of six years to life imprisonment. Subsequently, he was also convicted of escape in the first degree and sentenced to a term of two to four years, to run concurrently with the six years to life term but consecutive to any time owed on prior convictions.

In October 1982, the District Attorney of Westchester County moved to dismiss Cody's appeal. Cody apparently contested this motion on the ground that he had not yet received a transcript of the lower court proceedings, and in November 1982 the Appellate Division denied the motion. Nonetheless, two and one-half years later, in June 1985, the Appellate Division dismissed Cody's appeal sua sponte even though Maddox still had not received complete transcripts of the lower court proceedings. Neither Maddox nor the Clerk of the Appellate Division informed Cody at this time that his appeal had been dismissed. Cody was apparently unaware of the dismissal until 1988, when he wrote to the Appellate Division requesting that Maddox be replaced as his assigned counsel and was informed that his appeal had been dismissed three years earlier. Between 1986 and 1988, Cody and his family members had made repeated attempts to contact Maddox in order to clarify the status of the appeal, but they rarely received even a reply in response to their inquiries much less notice that the appeal had actually been dismissed.

Upon learning that his appeal had been dismissed, Cody moved pro se in the Appellate Division to vacate the 1985 dismissal order and to obtain assignment of new counsel. In July 1988, the Appellate Division granted Cody's motion, reinstated his appeal and assigned John F. Clennan, Esq. to prosecute it expeditiously. In February 1989, Cody sent the present habeas corpus petition to the United States District Court for the Eastern District of New York, alleging ineffective assistance of counsel and unconstitutional delay in the processing of his state criminal appeal. Shortly thereafter, the petition was transferred to the Southern District where it was filed. Six months later, in September 1989, the Appellate Division affirmed Cody's judgment of conviction, more than 10 years after his notice of appeal had first been filed. Subsequently, Cody was denied leave to appeal to the New York Court of Appeals.

In November 1989, Cody moved for appointment of counsel in his habeas action in the Southern District. The district court granted the motion in March 1990, and directed counsel to address the issue of undue delay in the appellate process. In October 1990, the district court granted Cody's application for habeas corpus relief and ordered his release from custody. The court applied the four-factor analysis of undue delay set forth in *Barker v. Wingo*,

407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972), which singles out the length of delay, the reason for delay, defendant's assertion of his right and prejudice as the relevant factors in determining whether a pre-trial delay is unconstitutional. The court found that the state bore principal responsibility for the undue delay in processing Cody's appeal, that Cody had been subjected to significant personal stress as a result and that the egregious delay constituted a violation of his constitutional right to due process. The court also concluded that release from custody with respect to the specific conviction at issue was justified even though the Appellate Division had already affirmed the judgment of conviction. The judge noted, however, that Cody would not be immediately released from prison because he remained subject to a continuing sentence of six years to life on the basis of later convictions. The court stayed the judgment pending resolution of Cody's appeal.

## II. Discussion

### A. *Appellant's Threshold Argument*

■ Appellant Warden challenges the ruling of the district court on grounds that may best be described as jurisdictional. Appellant points out that Cody's habeas petition does not attack the validity of the state judgment of conviction under which he is incarcerated. Rather, the petition relates only to defects in the state appellate process. Such defects, appellant Warden argues, simply do not affect the validity of a trial court's judgment of conviction; this is why, for example, the proper remedy for an ineffective appeal is not release from custody but rather the assignment of new appellate counsel to prosecute the appeal de novo. See, e.g., *Anders v. California*, 386 U.S. 738, 744–45, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967); *Wheeler v. Kelly*, 811 F.2d 133, 135 (2d Cir.1987). Appellant claims therefore that habeas review is not warranted. Appellant concedes that excessive state appellate delay may justify excusing a petitioner's failure to exhaust state remedies, but argues that in such circumstances the federal habeas court

should simply assume jurisdiction over the state appeal and decide the merits of any attack on the conviction itself.

In his habeas petition, Cody alleges that he is being held unlawfully because "after 9½ years of confinement [he] has not had timely appellate review" in "state court[ ]" of "the conviction for which he stands" incarcerated. He argues that this lengthy delay is a constitutional violation of his due process rights, a violation for which New York State is solely responsible owing to "[i]nexcusable bad faith." Cody's contention is that by flagrantly violating his due process rights in this way the state has rendered his otherwise lawful incarceration unlawful. Such a claim satisfies the jurisdictional prerequisite for habeas review.

We agree with Cody that the district court properly considered his claim on the merits. The Supreme Court has not yet directly addressed the issue of whether the Constitution guarantees a speedy criminal appeal, once an opportunity for an appeal is provided. The lower federal courts, however, have grappled with the question, and it is now clear in this circuit that substantial delay in the state criminal appeal process is a sufficient ground to justify the exercise of federal habeas jurisdiction. See, e.g., *Diaz v. Henderson*, 905 F.2d 652, 653–54 (2d Cir.1990); *Simmons v. Reynolds*, 898 F.2d 865, 867–70 (2d Cir.1990); *Brooks v. Jones*, 875 F.2d 30, 31–32 (2d Cir.1989); *Mathis v. Hood*, 851 F.2d 612, 614–15 (2d Cir.1988); *Wheeler v. Kelly*, 639 F.Supp. 1374, 1377–78 (E.D.N.Y.1986), aff'd, 811 F.2d 133 (2d Cir.1987). In *Mathis*, we held that even when the habeas petitioner seeks release from custody based on delay or denial of his right to appeal and his conviction is thereafter affirmed by the state appellate court, the affirmance does not by itself moot the habeas petition because undue appellate delay raises a legitimate due process claim. 851 F.2d at 613–15. Given substantial and unjustified delay, the petitioner is "entitled to a habeas determination of whether his appeal was no more than a 'meaningless ritual,'" *Simmons*, 898 F.2d at 867 (quoting *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985)). Of course, the

fact that a petitioner in such circumstances presents a cognizable habeas claim does not decide the substantive question of what type of relief, if any, is appropriate. *Mathis*, 851 F.2d at 615.

### B. *Arguments Concerning the Merits*

 Appellant next argues that even if the district court had jurisdiction, it erred in granting Cody the remedy of unconditional release. To determine whether release was an appropriate remedy, however, we must first determine whether Cody suffered a due process violation. With respect to the merits of Cody's claim, we have acknowledged that the right to a reasonably timely appeal is included among the protections afforded by the due process clause when a state does provide for an appeal. *Simmons*, 898 F.2d at 868. In analyzing whether delay in the appeal violates due process, we have used the *Barker* criteria, see *id.; Brooks*, 875 F.2d at 31; *Wheeler*, 639 F.Supp. at 1378–81, aff'd, 811 F.2d 133, although there is a question whether they are useful in this context.[1] Certainly, the differences in a defendant's situation before trial and after conviction suggest that at the very least the *Barker* factors should not be applied uncritically. For example, after conviction most, if not all, non-death penalty defendants want speedy access to the courts (appellate), while before trial access to the courts (trial) may be the last thing many defendants desire, at least many of those released on bail. Thus, the right to a speedy appeal raises a concern about access to the courts, and ordinarily a right of access is violated when access is denied, regardless of any showing of prejudice. However, an assessment of the usefulness of the *Barker* criteria in the speedy appeal context is unnecessary since it is absolutely clear even under *Barker* that the delay here violated Cody's right to due process. The delay of almost nine or over 10 years (depending upon whether the escape time is deducted) appears to be longer than any in our prior cases. Also, as the district court found, the fault of governmental actors is clear,

Cody did his best to assert his appellate rights and he and his family were most frustrated in their efforts. Though assessment of the merits of Cody's appeal was not significantly prejudiced, on balance the *Barker* factors weigh in his favor. Under the circumstances, we—like the district court—have no doubt that there was a due process violation.

But appellant Warden argues that in this circuit, "[t]he usual disposition of a meritorious habeas petition based on a delayed appeal is to grant an alternative writ that orders the state either to prosecute the appeal within a reasonable period of time, or to release the petitioner." *Simmons*, 898 F.2d at 869. Appellant further notes that under our precedents undue appellate delay in state criminal proceedings does not warrant granting the "extraordinary" remedy of unconditional release unless petitioner can also demonstrate that this delay substantially prejudiced the outcome of his appeal, impairing his ability to receive a fair, albeit late, review of his conviction. See *Simmons*, 898 F.2d at 869; *Diaz*, 905 F.2d at 653. Since in this case Cody's state appeal was decided against him roughly six months after he filed his habeas petition, without a showing of substantial prejudice, appellant argues that Cody was entitled neither to the customary remedy of the alternative (or conditional) writ nor to the "extraordinary" remedy of unconditional release.

We find appellant's argument persuasive. *Diaz* and *Simmons* clearly stand for the proposition that unconditional release from custody is not an appropriate remedy unless Cody can demonstrate that appellate delay caused substantial prejudice to the disposition of his appeal. Cody did not establish substantial prejudice nor did the district court make such a finding. It is true that Cody's second state-appointed appellate counsel, John F. Clennan, submitted an affidavit to the district court stating that due to the delay unspecified transcripts could not be located, unnamed issues could not be recalled and unidenti-

---

1. For criticism of use of the *Barker* criteria, see Arkin, Speedy Criminal Appeal: A Right With- out A Remedy, 74 Minn.L.Rev. 437, 495–98 (1990).

fied character references could not be obtained. Even if these allegations are accepted as true, none of them is sufficiently specific to show that, the appeal was substantially prejudiced. It follows that under our precedents the district court erred in granting the remedy of release.

Cody challenges this view, pointing out that it elevates substantial prejudice to the status of a necessary condition for granting habeas release from custody. According to Cody, such a rule is constitutionally deficient because it may serve to deprive a petitioner who has suffered a serious due process violation through state appellate delay of an effective legal remedy. Cody emphasizes that the due process violation is a direct consequence of the appellate delay, and is therefore not remedied by the subsequent provision of a fair, albeit late, appellate review process.

This is a troubling argument. We agree with Cody that a due process violation may occur—and did occur here—as a direct consequence of undue appellate delay, regardless of whether the victim of that delay subsequently receives a fair appellate review. The more difficult question, however, is what the proper remedy is for such a violation when the delay does not taint the disposition of the appeal. As we have just noted, on this issue we are constrained by our precedents. Under *Diaz* and *Simmons*, the remedy of unconditional release is not available unless the appeal has been tainted.

*Simmons* and *Diaz* apparently rest upon the following reasoning. The traditional function of the writ is to secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484–86, 93 S.Ct. 1827, 1833–34, 36 L.Ed.2d 439 (1973); see also *Simmons*, 898 F.2d at 868–69. An untainted affirmance of a petitioner's state appeal while his habeas petition is pending makes clear that the petitioner was confined pursuant to a valid judgment of conviction *throughout* the period of delay. The affirmance establishes that if the delay had not occurred and petitioner's due process right to a timely appeal had been fully satisfied, he would have been subject to

exactly the same term of confinement. Because the due process violation did not result in an illegal confinement, it cannot justify granting the habeas remedy of unconditional release. As we observed in *Simmons*, "[u]nconditional release is too much—it grants a prisoner dismissal of a criminal charge on which he was properly convicted, a right he does not have." 898 F.2d at 869. In other words, the injury suffered by a prisoner whose appeal is fairly affirmed while his habeas petition is pending does not involve any illegal deprivation of liberty. *Diaz* and *Simmons* also make clear that such a petitioner's only cognizable injury is the possible anxiety and anguish to which an unjustifiably long period of appellate review may give rise. We pointed out there that this type of injury is more appropriately redressed, if at all, by an action for damages, e.g., under 42 U.S.C. § 1983, than by overturning an otherwise valid judgment of conviction. See *Diaz*, 905 F.2d at 654; *Simmons*, 898 F.2d at 869.

Cody argues, however, that this reasoning is faulty for a number of reasons. First, he claims that it undermines the basis for issuance of a conditional writ, which requires an unduly dilatory state court either to hear the appeal within a specific period of time or release the prisoner. This is the course we followed, for example, in *Brooks*, 875 F.2d at 30. However, according to Cody, if prejudice to the outcome of the appeal were required to justify relief, the conditional writ should not be permitted because it allows a district court to require release without any showing of prejudice to the state court appeal if the state court refuses to heed the warning and hear the appeal within a specific period of time.

We do not accept this argument. When a conditional writ is ordered, the court has already found a due process infringement. Prejudice to the outcome of the appeal is not a necessary condition for such a finding. The question then becomes one of remedy. The ground for release under the conditional writ is not merely that additional time has elapsed after the district court's finding and initial warning, but that the state court has purposely allowed the con-

tinuation of a due process violation after the district court gave it notice that failure to provide a prompt appeal would result in invalidation of its judgment of conviction. Such deliberate state neglect of a petitioner's due process rights in the face of the district court's clear warning that further delay would not be tolerated is sufficiently egregious to suggest an impairment of the "constitutional integrity of the appeal itself," *Simmons*, 898 F.2d at 869, thus warranting application of the extraordinary remedy of release. Indeed, as the Third Circuit has noted,

> discharge is a generally available remedy where lesser remedies prove ineffective in curbing a continuing due process violation. Where a court order has denied discharge on the condition that a lesser remedy be granted, but that order has gone unfulfilled, discharge is indeed appropriate.

*Burkett v. Cunningham*, 826 F.2d 1208, 1222 (3d Cir.1987). See also *Lane v. Brown*, 372 U.S. 477, 485, 83 S.Ct. 768, 773, 9 L.Ed.2d 892 (1963); *Dowd v. Cook*, 340 U.S. 206, 210, 71 S.Ct. 262, 264, 95 L.Ed. 215 (1951); *Woods v. Nierstheimer*, 328 U.S. 211, 217, 66 S.Ct. 996, 999, 90 L.Ed. 1177 (1946).

Moreover, Cody's argument neglects the important pragmatic function of the conditional writ in offering federal assistance to state prisoners whose due process rights are violated by unreasonably delayed state appeals. While *Diaz* and *Simmons* make clear that the remedy of unconditional release in the absence of a showing of prejudice to the appeal grants too much, it is equally clear that "[d]enial of all relief is too little—it ignores the denial of effective counsel and a reasonably speedy appeal, rights a prisoner does have." *Simmons*, 898 F.2d at 869. The conditional writ is designed to chart a middle course that is responsive to the legitimate due process claims of state prisoners who are victims of undue appellate delay without immediately invalidating a properly determined judgment of conviction. We have stated that

the conditional writ is "perhaps our only effective tool for assisting state prisoners whose appeals are unreasonably delayed." *Diaz*, 905 F.2d at 654. As we see it, the decisions in *Simmons* and *Diaz* were designed "to shorten the time delay" before habeas petitions alleging appellate delay may be brought to the federal courts so that these claims may be raised more promptly. *Simmons*, 898 F.2d at 870. Indeed, in *Simmons* we reserved the right to reconsider "the now-rejected alternative of unconditional release" should such use of the conditional writ prove "unduly burdensome," or ineffective in reducing systemic appellate delay. Id.[2]

Cody also argues that the requirement of *Simmons* and *Diaz* that prejudice to the appeal be shown in order to justify release is inconsistent with the analysis of unconstitutional delay in the speedy trial context set forth in *Barker v. Wingo*. Cody points out that under *Barker* prejudice is merely one of four factors taken into account in assessing whether a delay has risen to unconstitutional proportions, and that if the district court determines that a delay is unconstitutional release remains the appropriate remedy even when the delay itself did not prejudice the trial's outcome. Thus, in *Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 2262, 37 L.Ed.2d 56 (1973), the defendant pressing a speedy trial claim "neither showed nor claimed that the preparation of his defense was prejudiced by reason of the delay." Nevertheless, the Court held that, notwithstanding the jury's return of a guilty verdict, "[g]iven the unchallenged determination that petitioner was denied a speedy trial" the only available remedy is "to set aside [the] judgment, vacate the sentence, and dismiss the indictment." *Id.* at 440, 93 S.Ct. at 2264. As noted above, this circuit has consistently employed the *Barker* criteria to analyze the constitutionality of state appellate delay. Cody argues that we should therefore adhere to the principle that prejudice to the outcome of a delayed

---

**2.** It should also be noted that lesser remedies may be available such as "release on bail pending appeal or sentence reduction by a factor proportioned to the delay suffered by the defendant." See Arkin, supra note 1, at 443.

state court proceeding is not a necessary condition of granting a prisoner the remedy of release if the court determines overall that the delay is unconstitutional.

Cody's argument rests on the premise that a defendant's right to a speedy trial is fully congruent with his right to a speedy appeal. However, we have already pointed out that there are obvious differences between the two rights. One of the most obvious is the effect of a violation of the respective rights upon the validity of a judgment of conviction. The Sixth Amendment right to a speedy trial imposes an essential limitation upon the right of the state to try a defendant in the first instance and to reach a valid judgment of conviction that overcomes the defendant's initial presumption of innocence. Failure to satisfy this condition means that the state forfeits its right to try the defendant on the original indictment, and as a result the judgment of conviction pursuant to these flawed proceedings is also void. See *United States v. Furey,* 514 F.2d 1098, 1102–03 (2d Cir.1975). It is for this reason that the Court emphasized both in *Barker* and in *Strunk* that "the unsatisfactorily severe remedy of dismissal of the indictment" is "the only possible remedy" once it is determined that a defendant's Sixth Amendment right to a speedy trial is violated. *Barker,* 407 U.S. at 522, 92 S.Ct. at 2188; *Strunk,* 412 U.S. at 439–440, 93 S.Ct. at 2263.

In contrast, the violation of a defendant's right to a speedy appeal does not by itself have the comparable effect of directly invalidating the court's judgment of conviction. At the appellate stage, a defendant has been "stripped of his presumption of innocence" and is in the position of trying "to upset the prior determination of guilt." *Ross v. Moffitt,* 417 U.S. 600, 611, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974). The mere fact of delay in the appellate process is not sufficient by itself to defeat the "prior determination of guilt." The effect of this prior determination continues; even when the state violates a prisoner's due process rights by appellate delay, the state does not thereby lose its right to an affirmance, if warranted, of the judgment of con-

viction. Consequently, a due process violation arising from a delayed appeal has a bearing upon the validity of the judgment of conviction only if the delay substantially affects the fairness of the appellate proceeding or undermines reasonable confidence in its outcome. This explains, then, why a showing of substantial prejudice to the appellate process is ordinarily a necessary condition for granting the remedy of release when the constitutional right to a speedy appeal is violated, whereas such a showing is not necessary when the Sixth Amendment right to a speedy trial is at issue.

It follows that, as we have noted above, the *Barker* criteria must be applied differently in analyzing the constitutional significance of appellate, as opposed to trial, delay. In the trial context, to determine whether a delay violates the Sixth Amendment all four *Barker* factors, including prejudice, must be weighed in conjunction, with no one factor either a necessary or a sufficient condition to the finding of a constitutional violation. *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193. Upon a determination that the delay constitutes a deprivation of the right to a speedy trial, dismissal of the indictment is "the only possible remedy." Id. at 522, 92 S.Ct. at 2188.

■ In the appellate context, the finding of a due process violation of the right to a speedy appeal does not end the inquiry. To decide whether the due process violation warrants the extraordinary habeas remedy of release from custody (or even a lesser remedy such as ordering a new appeal), the court must further determine whether the delay so tainted the appellate process as to "affect the constitutional integrity of the appeal itself." *Simmons,* 898 F.2d at 869. See also *Jenkins v. Coombe,* 821 F.2d 158, 161–62 (2d Cir.1987), cert. denied, 484 U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988), where a new appeal was ordered because the state prisoner had no counsel on his initial appeal. As already indicated, the record here does not support a finding that the disposition of the appeal was tainted by the delay. Accordingly, under our precedents we must find that the district court

erred in granting the remedy of uncondi-
tional release.

The judgment of the district court grant-
ing Cody's petition for a writ of habeas
corpus is reversed. We vacate the judg-
ment of the district court and remand the
case to allow Cody the option of recasting
his habeas corpus petition as a suit for
damages under 42 U.S.C. § 1983. We com-
mend assigned counsel for his diligent ef-
forts on Cody's behalf.