Graf v. Warden, NHSP                    CV-00-124-JD   04/12/02
                UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Carl Graf

      v.                               Civil No. 00-124-JD
                                       Opinion No. 2002 DNH 082
Warden, New Hampshire
State Prison


                            O R D E R


      The petitioner, Carl Graf, seeks habeas corpus relief,

pursuant to 28 U.S.C.A. § 2254, from his state court conviction

and sentence for sexual assault of a minor.  Graf raises due

process issues arising from the state prosecutor's communication

with the state court's chief judge, the trial judge's rulings

made after his recusal from the case, the state supreme court's

delay in deciding his appeal, alleged police misconduct during

the preparation of his defense, and the trial court's decision to

exclude certain evidence from cross-examination.  The parties

have filed motions for summary judgment and their objections.


                           Background

      Carl Graf was indicted by a grand jury in September of 1994

on three counts of sexual assault, arising from charges made by a

an eleven-year-old boy.  Trial was scheduled for April of 1995.

Prior to trial, Graf moved to dismiss the charges against him,

contending in part that the state's contact with certain witnesses interfered with his preparation for trial. The trial court denied the motion, finding "that the scant facts submitted by the defendant on this issue do not constitute an impermissible interference with the defendant's right to prepare his case." State v. Graf, No. 94-S-180, 181, 182, April 6, 1995, at 2; Resp. Ex. L.

Counsel for Graf requested a hearing before the trial judge on the admissibility of privileged matters and a hearing was held on April 10, 1995, to consider that issue, along with others. After the hearing, Carroll County Attorney Carol Yerden called the Chief Justice of the Superior Court to report that the trial judge, Judge O'Neill, had not been civil to her during the hearing.[1] According to a letter written by Senior Assistant Attorney General Cynthia White to the New Hampshire Supreme Court, after oral argument on Graf's appeal of his convictions, Yerden believed Judge O'Neill was fair to the state but was concerned that others would interpret his conduct as being unfair.

On April 12, 1995, Judge O'Neill held an in-chambers conference with counsel for the state and Graf. Judge O'Neill

---

[1] Yerden had previously complained to the chief judge about Judge O'Neill's demeanor in other cases.

indicated that he intended to recuse himself from the case and "asked all counsel whether there was any objection to his rendering a decision on the defendant's motion. . . . The defendant's counsel indicated that he had no objection, and the court issued its order the next day." State v. Graf, 143 N.H. 294, 302 (1999). Judge O'Neill issued both his recusal order and his order denying the defendant's motion pertaining to the admissibility of privileged matters on April 13. "Although the defendant filed a motion to reconsider that order, the defendant did not raise any objection to the order having been issued by the recused judge." Id.

The trial was rescheduled to begin on May 8, 1995, before Judge Fauver. Judge Fauver ruled on the defendant's motion to reconsider Judge O'Neill's order on the admissibility of privileged matters. The motion to reconsider was denied. Graf's counsel was not permitted to introduce privileged information about the victim of the charged sexual assaults during cross-examination of the state's expert witness.

The jury found Graf guilty on all three sexual assault counts and was sentenced to serve seven-and-one-half to fifteen years in prison and two consecutive terms of six to twelve years, suspended. Graf was sentenced on October 23, 1995, and filed his notice of appeal in November of 1995. The New Hampshire Supreme

Court accepted his appeal on January 26, 1996, and oral argument was held on May 21, 1997. The supreme court affirmed Graf's conviction in a decision issued on January 15, 1999, which was modified by a decision issued on April 23, 1999.

Graf's first federal habeas petition was dismissed in August of 1999 because it included unexhausted claims. Graf then filed a state habeas petition, raising the unexhausted claims, which was denied in December of 1999. After the New Hampshire Supreme Court denied his appeal from the dismissal of his state habeas petition, Graf again filed a petition in this court. In a previous order (November 1, 2000), the court dismissed four claims and parts of two others. The parties now move for summary judgment with respect to the remaining issues.

## Standard of Review

Summary judgment is appropriate in habeas proceedings, as in other civil actions, when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Fed. R. Civ. P. 81(a)(2). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue

4

in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999). The court considers cross motions for summary judgment separately, "drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

The standard of review of a petition seeking habeas relief depends upon the nature of the state court's decision. If the state court adjudicated the federal issue on the merits, a deferential standard under § 2254(d)(1) applies. See Niland v. Hall, 280 F.3d 6, 11-12 (1st Cir. 2002). When the state court did not address the federal issue, however, the federal court applies a de novo standard of review. See Fortini v. Murphy, 257 F.3d 39, 47 ("After all, AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address."); accord DiBenedetto v. Hall, 272 F.3d 1, 7 (1st Cir. 2001).

In this case, the respondent asserts that the deferential standard of § 2254(d)(1) applies. Graf does not apply any standard in his arguments in support of his own motion or in opposition to the respondent's motion, contending that it is enough to simply make his argument. In addition, Graf explicitly

5

states that he does not dispute that the deferential standard under § 2254(d)(1) applies.

Contrary to the parties' positions, it appears that the state court decisions did not adjudicate the federal issues on the merits. The court will determine the appropriate standard with respect to each claim separately.

## Discussion

The following issues remain in this case: (1) whether the conversation between the prosecutor and the Chief Justice concerning complaints about the trial judge, which lead to the trial judge's recusal, and the recused judge's rulings on pending motions constituted structural error in violation of due process; (2) whether the trial court's exclusion of good character evidence violated the compulsory process clause of the Sixth Amendment; (3) whether delay in deciding the appeal violated due process; (4) whether police misconduct occurred that interfered with the preparation of Graf's case in violation of due process; and (5) whether the trial court's decision to exclude privileged matters from cross-examination of the state's expert witness violated due process. The parties' motions for summary judgment on these issues are resolved as follows.

6

I. **Ex Parte Contact by the Prosecutor and Recusal of the Judge**

As pled in his original petition and his first amended petition, Graf claimed that "[a]n ex parte conversation between the prosecutor and the Chief Justice of the Superior Court concerning complaints the prosecutor had about the trial judge's handling of Mr. Graf's case, which lead to the trial judge's recusal after the first jury had been selected, violated Mr. Graf's right to due process." In his second amended complaint, Graf began with the same claim and then added "and the trial judge's subsequent rulings on pending motions after his disqualification, violated Mr. Graf's right to due process of law warranting automatic reversal as a 'structural error.'"

For purposes of summary judgment, Graf separates the events into two parts. First, he contends that the prosecutor's call to the Chief Justice was a due process violation because it was an inappropriate ex parte communication with the court and an improper attempt to "judge shop." Second, Graf contends that the trial judge's decision on Graf's motion, after his recusal, was a violation of due process constituting structural error. The respondent argues that the issue of structural error is not exhausted or is procedurally defaulted, that the New Hampshire Supreme Court's decision was not contrary to due process, and that no structural error occurred.

A. Exhaustion

Graf concedes that the issue of structural error was not raised until this proceeding. He argues, however, that the structural error issue need not have been exhausted because it only affects the remedy he seeks. He also contends that the respondent has waived the exhaustion issue by failing to raise it immediately in response to his second amended complaint.

In a habeas proceeding, the respondent will not be deemed to have waived the exhaustion requirement "unless the State, through counsel, expressly waives the requirement." § 2254(b)(3). Since there has been no express waiver of the exhaustion requirement here, no waiver has occurred.

Graf is also incorrect that his claim of structural error is not subject to the exhaustion requirement. In order to be entitled to habeas relief, Graf must show that he has exhausted the remedies available in the state courts or that state process is not available. See § 2254(b)(1). The purpose of the exhaustion requirement is to "ensure[] that state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." Duncan v. Walker, 533 U.S. 167, 178 (2001); accord Currie v. Matesanz, 281 F.3d 261, 267 (1st Cir. 2002).

"Exhaustion obligations mandate that a habeas petitioner present, or do his best to present, his federal claim to the state's highest tribunal." Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997). Trial error, which is reviewed for prejudice, and structural error, which is per se prejudicial, state different violations based on different legal analyses. See, e.g., United States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000); Hardnett v. Marshall, 25 F.3d 875, 879 (9th Cir. 1994).

On appeal to the New Hampshire Supreme Court, Graf focused on the prosecutor's conduct stating that "[a] long line of federal cases recognize the fact that misdeeds on the part of agents for the State can be so outrageous as to rise to the level of a due process violation." Supp. Br. at 3, Resp. Ex. G. The cases Graf cites pertain to whether actions by the police or other government agents may constitute a federal due process violation. Although Graf discusses the circumstance of his pending motion on the admissibility of the privileged materials, which was decided by Judge O'Neill after recusal, he cites no cases pertaining to judicial recusal or bias in support of that argument. Graf also asserted that the prosecutor's conduct had caused him extreme prejudice.

The New Hampshire Supreme Court characterized the claim as follows:

9

> The defendant argues that the county attorney's conduct in contacting the chief justice of the superior court constituted prosecutorial misconduct that was of such an egregious nature that his due process rights were violated. In addition, the defendant contends that his due process rights were violated when, <u>inter alia</u>, after recusing himself, the judge ruled on the defendant's motion seeking admissibility of privileged matters relating to the victim.

<u>Graf</u>, 143 N.H. at 302. The court considered the due process claims under New Hampshire law rather than federal law, ruling that the federal constitution provided no greater protection than the state constitution. <u>See</u> <u>id.</u>

The court held that the prosecutor's conduct did not violate Graf's due process rights. The court then reviewed the history of the recusal issue, noting that the failure of Graf's counsel to object initially to having the decision made by Judge O'Neill after recusal and Graf's subsequent failure to raise an issue about the decision being made after recusal in his motion for reconsideration and motion to dismiss. The court concluded that "if we assume that the defendant properly preserved for appeal the issue of whether the recused judge's ruling upon the defendant's motion violated due process, we conclude that the defendant has not demonstrated any prejudice and we find no violation of his due process rights." <u>Id.</u> at 303. The record confirms, and Graf does not argue otherwise, that the issue of structural error was not presented to the New Hampshire Supreme

10

Court.  Therefore, the claim was not exhausted.

Ordinarily, the inclusion of an unexhausted claim along with exhausted claims would require appropriate disposition of the unexhausted claim before the case could proceed.  See, e.g., Duncan v. Walker, 533 U.S. 167, 182-83 (2001); Rose v. Lundy, 455 U.S. 509, 510 (1982).  Instead, the respondent urges the court to dismiss the unexhausted claim pursuant to § 2254(b)(2).  Under § 2254(b)(2), the court may deny an unexhausted claim on the merits without the delay otherwise required in dealing with a mixed petition.  See Rudenko v. Costello, 2002 WL 449468, at *4 (2d Cir. March 20, 2002); Gattis v. Snyder, 278 F.3d 222, 237 (3d Cir. 2002).

B.  The Prosecutor's Call to the Chief Justice

Graf contends that the prosecutor's call was an inappropriate ex parte communication with the court, which amounts to structural error.  He asserts that he is not raising an issue of prosecutorial misconduct, the issue addressed by the New Hampshire Supreme Court on appeal.  Instead, Graf states: "Mr. Graf's argument is that the ex parte communication, the resulting recusal by Judge O'Neill, and the resulting post-recusal acts by Judge O'Neill, constitute due process violations."  Obj. at 6.  Although far from clear, it appears

11

that Graf's argument is that the prosecutor's call to the Chief Justice was an ex parte communication with the court relating to the merits of the case, which Graf contends was structural error, requiring dismissal of the charges against him.[2]

Because the claim of structural error was not adjudicated on the merits by the state court, the issue is reviewed de novo. See Fortini, 257 F.3d at 47; see also Daniel v. Cockrell, 283 F.3d 697 (5th Cir. 2002) (publication pages not available). In order to be entitled to habeas relief in this context, Graf must show that "he is in custody in violation of the Constitution or law or treaties of the United States." § 2254(a).

Graf cites Carroll v. President & Comm'rs of Princess Anne, 393 U.S. 175 (1968), in support of his claim. In Carroll, the Supreme Court held that an ex parte restraining order preventing a political rally violated the First Amendment. See id. at 181-82. As such, Carroll appears to have no relevance to Graf's claim, and Graf offers no analysis based on Carroll.

Graf also cites Yohn v. Love, 76 F.3d 508 (3d Cir. 1996), and Haller v. Robbins, 409 F.2d 857 (1st Cir. 1969). In Yohn,

---

[2]The respondent understood Graf's claim as asserting prosecutorial misconduct in violation of due process, the issue addressed by the New Hampshire Supreme Court. As noted above, the structural error issue was not exhausted and is reviewed pursuant to § 2254(b)(2).

after the trial judge ruled that a tape recorded conversation with the defendant was inadmissible, during a recess, the prosecutor called the chief justice of the Pennsylvania Supreme Court to discuss the ruling. See Yohn, 76 F.3d at 512-13. The chief justice called back and talked by telephone with the trial judge and the prosecutor while defense counsel was present but lacked a telephone. See id. In response to the discussion, the trial judge changed his ruling and allowed the tape recording into evidence. See id. at 514. The Third Circuit ruled that the conversation, which involved the merits of the admissibility of the tape without the participation of defense counsel, denied the defendant's due process right to notice and an opportunity to be heard. See id. at 517. The court also concluded that the error was not structural but instead required a showing of prejudice. See id. at 522-23.

In Haller, "the prosecutor reported to the sentencing judge in the absence of petitioner and his counsel a highly detrimental hearsay statement as to petitioner's conduct." 409 F.2d at 858. The First Circuit concluded that the ex parte communication by the prosecutor with the sentencing judge, on the merits of the sentencing decision, violated due process. See id. at 859-60. The resulting trial error was subject to the harmlessness

13

analysis.[3]  See id. at 860.

The record does not support Graf's suggestion that the prosecutor engaged in ex parte communication regarding the merits of Graf's case, unlike the circumstances in Yohn and Haller.  In addition, such communication, even if it had occurred, would constitute trial error subject to harmlessness review, not structural error.  Since nothing in the record indicates that Graf was prejudiced by the prosecutor's call to the Chief Justice, or that the call might have influenced the outcome in any way, no basis exists on that ground for granting habeas relief.

To the extent Graf argues that the prosecutor's call to the Chief Justice was a form of "judge shopping," that claim would also fail.  Graf cites no legal authority in support of that theory.  Courts that have considered the argument of judge shopping by a prosecutor have concluded that any such error is not structural and is subject to a showing of prejudice.  See United States v. Pearson, 203 F.3d 1243, 1262-63 (10th Cir. 2000); United States v. Erwin, 155 F.3d 818, 825 (6th Cir. 1998).

_____

[3]The harmless error analysis applicable to habeas corpus has changed since Haller was decided.  See, e.g., Calderon v. Coleman, 525 U.S. 141, 145-46 (1998); California v. Roy, 519 U.S. 2, 4-5 (1997); O'Neal v. McAninch, 513 U.S. 432, 437 (1995); Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

No legal or factual basis exists in the record to conclude that the prosecutor's call to the Chief Justice, which lead to the recusal of the trial judge, is grounds to grant a writ of habeas corpus. Therefore, that claim is denied pursuant to § 2254(b)(2).

C. Decisions by the Trial Judge after Recusal

Graf invokes his federal due process right to a neutral and detached trial judge and asserts that Judge O'Neill's rulings after recusal constitute structural error necessitating reversal without a consideration of prejudice. He cites Ward v. Monroeville, 409 U.S. 57 (1972) (holding that mayor serving as judge was presumed to be biased due to revenue produced for town by fines, fees, and costs); Chapman v. California, 386 U.S. 18 (1967) (establishing strict harmless error standard for federal constitutional error); and Tumey v. Ohio, 273 U.S. 510 (1927) (holding that judge's personal pecuniary interest in imposing fines supported presumption of bias).

To maintain his claim of structural error, however, Graf must show that Judge O'Neill was either actually biased against him when he ruled on the pending motions after recusal, or that he had some basis for rendering a biased judgment that would support a presumption of bias. See Vasquez v. Hillery, 474 U.S.

15

254, 263 (1986); Tumey, 273 U.S. at 532. The mere appearance of partiality, without circumstances showing "a possible temptation . . . to forget the burden of proof," is not enough. Ward, 409 U.S. at 60; see also Cartalino v. Washington, 122 F.3d 8, 11 (7th Cir. 1997).

The record shows no personal, financial, or other improper interest that Judge O'Neill had in Graf's case, and Graf does not argue that such interests existed. Instead, Graf relies on the fact that Judge O'Neill recused himself and was disqualified from making decisions in the case when he decided the pending motion, apparently assuming that the fact of recusal establishes bias. The record shows, however, that Judge O'Neill recused himself because of a possible appearance of a lack of impartiality due to a personal conflict perceived by the prosecutor.

Graf provides no factual support for presuming that Judge O'Neill was biased against him.[4] Even taking the facts in the light most favorable to Graf, no trialworthy issue remains as to whether Judge O'Neill was biased when he ruled on the pending motion after recusal. Therefore, Graf's claim that Judge O'Neill's decision on his pending motion constituted structural

---

[4]In addition, after discussing the recusal issue with counsel and indicating that he would likely recuse himself, Judge O'Neill asked counsel if they objected to having him decide the pending motions and they told him that they did not object.

16

error is denied on the merits pursuant to § 2254(b)(2).


II.  Character Evidence

Graf contends that his due process rights were violated by the trial court's decision to exclude evidence of his good character.  The court previously ruled that Graf procedurally defaulted a due process claim based on the exclusion of character evidence.  See Order, Nov. 1, 2000, at 6.  The court also ruled that Graf had exhausted his Sixth Amendment claim that the trial court violated the Compulsory Process Clause by excluding the character evidence.  Graf, however, does not pursue the Sixth Amendment claim either in support of his own motion for summary judgment or in opposition to the respondent's motion.[5]

The New Hampshire Supreme Court decided the character evidence issue under state law, holding that the New Hampshire Constitution is at least as protective as the federal constitution of the asserted Sixth Amendment right.  See Graf, 143 N.H. at 296.  Therefore, this court's review is de novo.  See Fortini, 257 F.3d at 47.

"Under the Sixth Amendment Compulsory Process Clause,

---

[5]Although Graf may have intended to abandon his Sixth Amendment claim, the court will address the claim as an unopposed motion for summary judgment by the respondent.

17

criminal defendants generally have the right to present 'competent, reliable . . . exculpatory evidence.'" DiBenedetto, 272 F.3d at 7-8 (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). The right to present evidence is not unlimited, however. See Chambers v. Mississippi, 410 U.S. 284, 302 (1973). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410 (1988). States have broad latitude to adopt rules of evidence to govern criminal prosecutions. See id.

Graf "sought to introduce testimony, through opinions and specific instances of conduct as testified to by other witnesses, to show that: (1) he was not the type of person who would engage in aggravated felonious sexual assault; and (2) he was not the type of person who would take advantage of children." Graf, 143 N.H. at 296. The trial court granted the state's motion in limine to preclude the evidence, under New Hampshire Rule of Evidence 404(a)(1), and the New Hampshire Supreme Court affirmed.

New Hampshire Rule 404(a)(1) provides: "Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except: (1) Character of Accused - - Evidence of a pertinent trait of character offered by

18

an accused . . . .["6] As the trial court discussed, general evidence of Graf's good character and of the absence of pedophilia tendencies does not tend to disprove the charges against him because sexual assault on a child is not performed in public nor is it likely to be known by others. As the supreme court concluded, the trial court's ruling that the evidence did not relate to a pertinent trait of character was in conformity with the rule.[7]

The record does not show that the trial court's ruling prevented Graf from presenting admissible and exculpatory evidence in violation of the Compulsory Process Clause.[8] The respondent is entitled to summary judgment on Graf's Sixth Amendment claim pertaining to the exclusion of character evidence.

---

[6]Graf makes no argument that Rule 404(a)(1), which is substantially similar to Federal Rule of Evidence 404(a)(1), is either outmoded, arbitrary, or not a legitimate evidentiary limitation. See United States v. Scheffer, 523 U.S. 303, 308 (1998).

[7]The supreme court decided the application of Rule 404(a)(1) in the context of Graf's evidentiary argument on appeal.

[8]Further, even if a constitutional violation occurred, Graf has not shown that any error had a substantial and injurious effect on the jury's verdict in his case. See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)

19

III.  Delay in Deciding the Appeal

Graf contends that the more than three years that elapsed between his sentencing and the decision on his appeal constitutes a due process violation.  Graf's state habeas petition was decided after the New Hampshire Supreme Court issued its decision affirming Graf's conviction.  The state habeas court ruled that the issue was, therefore, moot.  Since the issue was not adjudicated on the merits, de novo review applies once again.

The Supreme Court has not clearly recognized a due process right to a speedy appellate process.  See, e.g., Cody v. Henderson, 936 F.2d 715, 718 (2d Cir. 1991); Dias v. Maloney, 156 F. Supp. 2d 104, 136 (D. Mass. 2001).  Lower federal courts that have inferred a due process right to a timely resolution of the appellate process have required a showing of prejudice.  See, e.g., United States v. Luciano-Mosquera, 63 F.3d 1142, 1158 (1st Cir. 1995); Harris v. Champion, 15 F.3d 1538, 1559 (10th Cir. 1994); Latimore v. Spencer, 994 F. Supp. 60, 67 (D. Mass. 1998).  When a petitioner's conviction has been affirmed, even after a lengthy delay, he cannot show prejudice unless the delay affected the appeal process.  See Luciano-Mosquera, 63 F.3d at 1158; Cody, 936 F.2d at 720.  Graf has not provided any evidence that his appeal was tainted by the delay in the appellate process.

20

IV.  Police Misconduct

Graf contends that the police chief of the town where the incidents took place directed the development of the case against him and that the chief was biased against him.  Graf argues that the chief interfered with his defense by instructing witnesses not to talk to defense investigators.  The issue of police misconduct apparently was first raised in a pretrial motion to dismiss, which was denied due to a lack of evidence of interference with his preparation for trial.  Graf did not pursue the issue on appeal.

Graf raised the police misconduct issue again in his state habeas proceeding, claiming newly discovered evidence concerning the police chief's alleged statement about Graf to a third party.  The state habeas court ruled as follows:

> Finally, the petitioner has raised a newly discovered claim concerning a statement made by the former chief of police in the town where the crimes occurred.  However, the State argues that the former chief was not involved in the petitioner's case, another officer investigated and testified at trial, and that there was no plot afoot against the petitioner.  The court finds that the petitioner has not met its [sic] burden of proving, by a preponderance of the evidence, that reliable evidence of this allegation exists.

Graf v. Warden, 99-E-377, at *4 (N.H. Sup. Ct. Dec. 10, 1999), Resp. Ex. J.

Without addressing the state court's factual finding, Graf

21

continues to argue that his trial was unfair due to the actions of the allegedly biased police chief. In support of his theory, Graf offers a copy of a note from one "Gary Crabtree" to Graf's counsel. Crabtree states that he believes the charges and evidence against Graf were manufactured by the chief because he heard the chief say in reference to Graf, "I'm going to get that son of a bitch." Pet. Ex. N. Graf submitted the same evidence to the state habeas court, which ruled that the evidence was insufficient to demonstrate police misconduct.

"[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1). Since Graf has not carried his burden of rebutting the presumption in favor of the state court's finding that he failed to provide reliable evidence of police misconduct, the respondent is entitled to summary judgment on the police misconduct claim.


V. <u>Decision to Prohibit Use of Privileged Matters During Cross-Examination of State's Expert Witness</u>

Graf contends that the trial court's decision not to allow his counsel to introduce privileged information during his cross-examination of the state's expert witness violated Graf's federal

22

due process rights.[9]  Graf presented the federal due process issue to the New Hampshire Supreme Court, but the court decided the issue under the state constitution, without reference to federal constitutional law.  See Graf, 143 N.H. at 300-01. Therefore, the de novo standard of review applies.  See Fortini, 257 F.3d at 47.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.  The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."  Chambers, 410 U.S. at 294.  The right, however, is not absolute, and states retain "broad latitude" in establishing evidentiary rules.  See Scheffer, 523 U.S. at 308.  Therefore, a state evidentiary rule does not violate due process "unless it is 'arbitrary or disproportionate' and 'infringe[s] upon a weighty interest of the accused.'"  Fortini, 257 F.3d at 46 (quoting Scheffer, 523 U.S. at 308).

During the criminal trial, the state called an expert witness to testify about delayed disclosure by child victims of

---

[9]Although Graf raised both due process and Sixth Amendment confrontation clause rights on appeal to the New Hampshire Supreme Court, he has pursued only the due process issue for habeas relief here.

sexual abuse.  See Graf, 143 N.H. at 300.  The expert's testimony

was presented through a series of hypothetical questions.  See

id.  Defense counsel was permitted to ask hypothetical questions,

during cross-examination, which incorporated some facts from

privileged matters that were not in evidence.  See id.  In

particular, defense counsel asked questions that included the

following information:[10]

> [1] hearsay statements of the victim to his therapist
> that he had engaged in what he believed to be
> inappropriate sexual contact with his younger brother
> and the resulting punishments he had received from his
> parents; and [2] that the victim did not disclose the
> allegations in question to his therapist at the time
> the acts were alleged to have occurred, notwithstanding
> the fact that he was disclosing the perceived
> inappropriate contact with his brother.

Graf, 143 N.H. at 300.  The trial court did not permit defense

counsel to introduce substantive evidence to support the

hypothetical questions.

On appeal, the New Hampshire Supreme Court concluded that

the privileged information would not have helped Graf's case.

The court noted that in response to defense counsel's

hypothetical questions which included the privileged information,

---

[10]The court did not consider the third subject of excluded
evidence, the victim's mother's statements, because Graf did not
contest the trial court's ruling as to that evidence, and
therefore, that issue is procedurally defaulted.  See Graf, 143
N.H. at 300.

24

the expert witness testified "that his first impression was that the victim probably would not disclose the abuse." Graf, 143 N.H. at 301. Therefore, the court concluded, "even if the trial judge had permitted the defendant to admit substantive evidence on the issues in question, the expert's opinion was that such information would lead him to believe that the victim would be less likely, as opposed to more likely to disclose the abuse--a fact that would contradict the theory of defense at trial." Id.

In this action, Graf argues that the privileged matters that were excluded would show that the boy had other sources of advanced sexual knowledge, that he had a trusting relationship with his therapist to whom he had made other similar disclosures, that he was in counseling in part because of lying, and that he did not mention the charged assaults until almost a year after they occurred. Graf also submits the opinion of a psychologist, Dr. Eric G. Mart, to bolster his argument. The respondent asserts that Graf did not raise the issues of advanced sexual knowledge or lying in the state court proceedings, that the state supreme court properly determined that exclusion of the privileged matters was not prejudicial, and that the opinion of Dr. Mart should not be considered.

This court may expand the record to include "additional materials relevant to the determination of the merits of the

petition."[11]  Rule 7, Rules Governing § 2254 Cases.  Graf previously filed a motion to expand the record, seeking in part to include an opinion by an expert witness that attacked the opinions of the state's expert witness.  <u>See</u> Order, Feb. 21, 2001.  The court declined to expand the record to include the opinion because it was not relevant to the issue of the privileged information.

With respect to the new opinion by Dr. Mart, Graf simply submitted the opinion with his motion for summary judgment.  He did not move to expand the record, as is required by Rule 7.  Therefore, Dr. Mart's opinion is not part of the record before the court and will not be considered.

In addition, even if the opinion had been offered in an appropriate motion, the motion would be denied, because Dr. Mart's opinion, like the previously offered opinion, primarily attacks the opinion of the state's expert witness.  To the extent that Dr. Mart's opinion addresses privileged matters at all, he discusses the boy's cognitive abilities, not the privileged matters that were at issue at trial.

Graf claims that the exclusion of the evidence left the jury

_____

[11]As the issue was not raised, the court does not consider the relationship between Rule 7 and § 2254(e)(2).  <u>See, e.g.</u>, <u>Boyko v. Parke</u>, 259 F.3d 781, 790 (7th Cir. 2001); <u>Holloway v. Horn</u>, 161 F. Supp. 2d 452, 510 n.49 (E.D. Pa. 2001).

with an inaccurate picture of the boy and of why he might have delayed disclosing the abuse. The issue before the court, however, is whether a due process violation occurred when the trial court excluded from cross-examination the information that the boy had disclosed to his therapist inappropriate sexual contact with his brother and did not disclose the charged abuse for almost a year. The state's expert gave his opinion that the referenced privileged information would not change his view and that the information actually supported his opinion that the boy would have delayed his disclosure of the abuse. The supreme court concluded that because the excluded information would not have affected the expert's opinion, no prejudice occurred. Graf has not shown that he had a weighty interest in admitting the evidence or that the trial court's decision was arbitrary or disproportionate in relation to such an interest.

Therefore, the respondent is entitled to summary judgment on the issue of whether the privileged matters were excluded in violation of due process.

## Conclusion

For the foregoing reasons, the petitioner's motion for summary judgment (document no. 55) is denied.  The respondent's motion for summary judgment (document no. 62) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

April 12, 2002

cc:  Michael J. Sheehan, Esquire
     Neals-Erik W. Delker, Esquire